[Nos. A064689, A065245. First Dist., Div. Five. Jan. 31, 1995.]

HEIDE V. BETZ, Plaintiff and Respondent, v.
CHARLES J. PANKOW, Defendant and Appellant.

COUNSEL

Nossaman, Guthner, Knox & Elliott, Kurt W. Melchior, Patrick J. Richard, Buchalter, Nemer, Fields & Younger and Marcus M. Kaufman for Defendant and Appellant.

James Duryea, Jr., for Plaintiff and Respondent.

OPINION

**HANING, J.**—Charles J. Pankow appeals a judgment vacating an arbitration award.[1] The issue before us is whether an arbitration award must be vacated because an arbitrator was formerly a partner in a law firm during a period when the firm represented a business entity in which one of the arbitrating parties had a financial and/or leadership interest, even though the arbitrator was not acquainted with the party and unaware of the party's representation by his former law firm.

HISTORY

Pankow and respondent Heide V. Betz were the sole members of a partnership under an agreement providing that any dispute arising thereunder would be resolved by arbitration under the auspices of the American Arbitration Association (AAA). When the parties were unable to agree on the manner in which to dissolve their partnership their dispute was submitted to a panel of three arbitrators selected by the AAA, one of whom was Attorney David Sandborg. After approximately 42 days of hearing an award was rendered in favor of Pankow. Betz petitioned the trial court for vacation of the award on several grounds, including gender bias. The court denied her petition and entered judgment confirming the award on all grounds. Betz appealed on the gender bias issue alone, and we affirmed. (*Betz v. Pankow* (1993) 16 Cal.App.4th 919 [20 Cal.Rptr.2d 834] (*Betz I*).)

Six months before he was selected as an arbitrator, Sandborg left the law firm of Bronson, Bronson & McKinnon, where he was a partner. Shortly after the *Betz I* judgment was entered and while her appeal thereof was pending, Betz learned that between 1985 and 1989 the Bronson firm had

---

[1]A064689 is an appeal from the trial court's original judgment. After Pankow appealed this judgment, the trial court, sua sponte, filed an amended judgment clarifying its decision but not changing its holding.

A065245 is an appeal from the amended judgment. The two appeals have been consolidated.

represented three business entities bearing Pankow's name and that Pankow was an officer and/or shareholder in each of these entities.[2] Betz then moved to vacate the judgment on the ground that Sandborg was disqualified as an arbitrator due to his affiliation with the Bronson firm at the time it represented the Pankow entities. Pankow opposed her motion on jurisdictional grounds, without denying or submitting any documentation challenging or explaining the newly discovered facts that formed the basis of her motion to vacate. The trial court denied Betz's motion on the ground it was without jurisdiction to entertain it, given the pendency of the appeal. We affirmed the order, noting that "upon issuance of our remittitur the trial court will regain jurisdiction to entertain [Betz's] petition to vacate the judgment and award." (*Betz* v. *Pankow* (1993) 16 Cal.App.4th 931, 941 [20 Cal.Rptr.2d 841] (*Betz II*).)

After the remittitur issued in *Betz II*, Betz renewed her motion to vacate the judgment and award on the ground of Sandborg's affiliation with the Bronson firm during the time it represented the Pankow businesses. The trial court found that Sandborg was a partner in the Bronson firm when it handled the Pankow entities litigation, but that he did not work on the litigation, did not know that Pankow or any business entity in which he had an interest had been a client of the firm, and had never met Pankow prior to the arbitration. The court concluded, however, that Sandborg's past professional association with the Bronson firm created a reasonable impression of possible bias against Betz, that the duty of investigating facts to be disclosed lies with the arbitrator, and that Sandborg should have made a "conflicts" check with the Bronson firm or, if he was unable to do so because he was no longer a member of the firm, disclosed his reasons for not doing so. On the basis of these conclusions the trial court vacated the judgment confirming the award and entered a new judgment vacating the award.

## DISCUSSION

■ Although Pankow raises various claims of error, the dispositive issue is whether the record establishes a reasonable impression of possible bias on the part of the arbitrator and thus requires that the award be vacated. (See *Betz I*, *supra*, 16 Cal.App.4th at pp. 924-925.)

Preliminarily, we address some basic misunderstandings by the parties concerning our previous decision. Betz contends that our decision in *Betz II*

---

[2]The subject lawsuit was entitled, Pankow Building Systems, Inc., Charles Pankow, Inc., and Pankow Builders, Inc. v. Fred S. James & Co. (Super. Ct. San Francisco County, 1985, No. 829704.) It commenced in 1985 and continued at least until April 19, 1989, when Division One of this court dismissed plaintiffs' appeal from the judgment pursuant to stipulation of the parties (A041023).

was a directive to the trial court to vacate the award on the ground of bias based on the bare facts alleged in her petition. Pankow seems at times to suggest there is nothing improper about an undisclosed attorney for one of the parties to a legal dispute serving as an arbitrator thereof, and that we have destroyed the entire system of arbitration by ruling otherwise in *Betz II*. Both parties appear to have misinterpreted our decision in *Betz II*.

We again reject the suggestion that without full disclosure an attorney can serve as arbitrator to a dispute in which the attorney/arbitrator or his or her law firm represents, or has represented, one of the litigating parties, and are confident that this fundamental principle does not cause a collapse of the current system of arbitration. Arbitration awards are nearly immune from attack in California (see *Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 9-12 [10 Cal.Rptr.2d 183, 832 P.2d 899]), but one of the limited grounds for challenge is bias on the part of the arbitrator. (See Code Civ. Proc., § 1286.2, subd. (b).) The test for bias is whether an impression of possible bias exists (*Johnston* v. *Security Ins. Co.* (1970) 6 Cal.App.3d 839, 842-844 [86 Cal.Rptr. 133]), and it is well established that an attorney-client or other fiduciary relationship between the arbitrator and a litigant creates an impression of possible bias. (*Banwait* v. *Hernandez* (1988) 205 Cal.App.3d 823, 829-830 [252 Cal.Rptr. 647].) In short, all parties to the dispute are entitled to a hearing before a decisionmaker who has not provided aid and comfort to the enemy.

In response to Betz's contention, all we held in *Betz II*, as the trial court understood, was that Betz's uncontested declarations and moving papers in support of her motion to vacate the judgment and award were sufficient to entitle her to a *hearing* of her claim on the merits. Her entitlement to *relief* is dependent on *all* the facts as developed at the hearing on her petition to vacate.

In her initial motion to vacate the award, Betz presented evidence that (1) following the award she discovered for the first time that Sandborg was a partner in the Bronson firm when it represented three business entities in which Pankow had an interest (Charles Pankow, Inc.; Pankow Building Systems, Inc.; and Pankow Builders, Inc.); and (2) the Bronson firm's relationship with the Pankow businesses had not been disclosed to her at any time prior to entry of the award. Pankow did not dispute Betz's facts, and in *Betz II* we held she had made a prima facie showing entitling her to a hearing on her motion to vacate the award.

The record now reveals that (1) Sandborg was a partner in the Bronson firm during 1985 to 1988 when it represented three Pankow businesses in a single litigation; (2) Sandborg left the Bronson firm and joined

another law firm before the Bronson firm completed the Pankow litigation; (3) Sandborg was not aware of the Bronson firm's prior representation of the Pankow businesses; and (4) Sandborg had never met Pankow nor had any relationship with him prior to the arbitration. Both parties have structured their arguments below and on appeal on the basis of these facts. Therefore, insofar as we are dealing with undisputed facts, we may make our own conclusions of law based thereon. (*Locklin* v. *City of Lafayette* (1994) 7 Cal.4th 327, 369 [27 Cal.Rptr.2d 613, 867 P.2d 724].)

The specific question before us is whether Sandborg's lack of actual knowledge of the relationship between his former law firm and the entities in which Pankow had an interest creates an impression of possible bias requiring vacation of the award. Betz argues for a per se rule of vacatur when there has been any professional relationship between an attorney-arbitrator's former law firm and an arbitrating party, regardless of the individual arbitrator's lack of knowledge. However, California does not apply such a rigid rule; the cases have examined each situation on its individual merits.

■■■ An award must be vacated if the court determines, inter alia, that the rights of a party were substantially prejudiced by the misconduct or bias of a neutral arbitrator. (Code Civ. Proc., § 1286.2, subds. (b) & (c).)[3] The established test for making this determination when a party asserts prejudice because of an arbitrator's conflict of interest is whether the record reveals facts which might create an impression of possible bias. The test is an objective one—whether such an impression is created in the eyes of the hypothetical reasonable person. (*Betz I, supra,* 16 Cal.App.4th at pp. 923-925, 928-929; *Banwait* v. *Hernandez, supra,* 205 Cal.App.3d at p. 829.) As the cases demonstrate, the test is also fact specific. There is no bright line of demarcation for the existence of an impression of possible bias, and each case must be considered in light of its particular circumstances. (See *Banwait* v. *Hernandez, supra,* at pp. 828-831.)

A frequent cause for an impression of possible bias is the existence of a present or past business relationship between the arbitrator and a party, its

[3]Code of Civil Procedure section 1286.2 was amended, effective January 1, 1994, to add as another ground for vacation that "an arbitrator making the award was subject to disqualification upon grounds specified in [section 1282, subdivision (e)], but failed upon receipt of timely demand to disqualify himself or herself as required by those provisions." (Stats. 1993, ch. 768, § 5.) Section 1282, subdivision (e), requires arbitrators to disqualify themselves, upon demand of any party to the arbitration agreement made before the conclusion of the arbitration proceedings, on any of the grounds specified in section 170.1 for disqualification of a judge. Among the grounds for judicial disqualification are a judge's belief that a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial. (Code Civ. Proc., § 170.1, subd. (a)(6)(C).)

counsel or a witness. (See, e.g., *Commonwealth Corp.* v. *Casualty Co.* (1968) 393 U.S. 145, 151 [21 L.Ed.2d 301, 306, 89 S.Ct. 337]; *Schmitz* v. *Zilveti* (9th Cir. 1994) 20 F.3d 1043, 1044; *Neaman* v. *Kaiser Foundation Hospital* (1992) 9 Cal.App.4th 1170, 1172 [11 Cal.Rptr.2d 879]; *Figi* v. *New Hampshire Ins. Co.* (1980) 108 Cal.App.3d 772, 777-778 [166 Cal.Rptr. 774]; *Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 369 [133 Cal.Rptr. 775, 84 A.L.R.3d 343]; *Johnston* v. *Security Ins. Co., supra,* 6 Cal.App.3d at p. 843.) Such a relationship suggests a pecuniary interest on the part of the arbitrator or that the arbitrator will place unusual trust or confidence in the party with whom the relationship existed, thus giving the arbitrator reason to favor the party for reasons wholly unrelated to the merits of the arbitration. (*Banwait* v. *Hernandez, supra,* 205 Cal.App.3d at pp. 830-831.)

Betz relies largely on *Schmitz* v. *Zilveti, supra,* to support her contention that Sandborg's past relationship with the Bronson firm during a period when it represented the Pankow businesses is alone sufficient to create an impression of possible bias, regardless of Sandborg's actual lack of knowledge of the Pankow entity litigation. In *Schmitz,* the arbitration was conducted under the auspices of the National Association of Securities Dealers (NASD). The NASD "Code of Arbitration Procedure" requires arbitrators to disclose any direct or indirect financial interest in the outcome, any relationship that might reasonably create an appearance of bias or partiality and any personal relationships with any party, its counsel, or witnesses. (*Schmitz* v. *Zilveti, supra,* 20 F.3d at p. 1044.) The NASD rules also require arbitrators to make a reasonable effort to inform themselves of any such interest or relationship. One of the *Schmitz* arbitrators was an attorney in a law firm that had represented the parent company of a party to the arbitration over a period of 35 years in numerous cases. The arbitrator was aware of both the arbitrating party's relationship to the parent company and his firm's representation of the parent company, but ran a conflicts check only of the arbitrating party. Federal law permits vacation of an arbitration award where there was "evident partiality" in the arbitrators. (9 U.S.C. § 10(a)(2).) *Schmitz* held that the relationship of the parent company to the litigation created a conflict, that the attorney/arbitrator had constructive knowledge of his firm's past representation of the parent company, that he had a duty under the NASD rules to make a reasonable effort to inform himself of his firm's representation of the parent company, and that his failure to inform the parties created a reasonable impression of evident partiality requiring that the award be vacated. (*Schmitz* v. *Zilveti, supra,* 20 F.3d at pp. 1048-1049.)

A principal support for the *Schmitz* holding came from *Close* v. *Motorists Mut. Ins. Co.* (1985) 21 Ohio App.3d 228, [486 N.E.2d 1275]. Under Ohio

statutes, grounds for vacating an arbitration award include "evident partiality" on the part of an arbitrator. (*Id.*, at p. 1278.) The arbitration in *Close* concerned a claim against an insurance company by an insured for uninsured motorist benefits. The arbitration was conducted under the auspices of the AAA. One of the arbitrators was a partner in the litigation department of a law firm that had represented the insurance company in accident claims cases and continued to do so throughout the arbitration. The arbitrator was unaware of this representation, although he knew that his firm conducted a busy insurance defense practice for a number of insurance companies. He had access to a client index and weekly "new client" notices which would have alerted him to the conflict, and which he routinely checked for conflicts when accepting new clients. *Close* held that "an arbitrator's partnership in a law firm having a substantial, continuing attorney-client relationship with a party is grounds for vacating an arbitration award under [the 'evident partiality' statute]." (*Ibid.*) It also held that attorney/arbitrators owe the same duty to parties to an arbitration to check for conflicts as they owe to new clients, that this arbitrator had constructive knowledge of the conflict, and that he was under an obligation to discover and disclose the conflict both under the AAA arbitration rules and the American Bar Association Code of Professional Responsibility.

The AAA rules governing an arbitrator's disclosure and discovery of possible bias are essentially identical to those of the NASD. Rule 19 of the AAA's Commercial Arbitration Rules requires any person appointed as a neutral arbitrator to disclose to the AAA any circumstance likely to affect impartiality, including any bias, financial or personal interest in the result of the arbitration or past or present relationship with the parties or their representatives. Canon II of the AAA's Code of Ethics for Arbitrators in Commercial Disputes requires persons accepting appointment as arbitrators to make reasonable efforts to inform themselves of any such interests or relationships.

*Schmitz* and *Close* are distinguishable from the present case in several significant particulars. The *Schmitz* arbitrator was aware of the relationship between the arbitrating subsidiary and its parent, and that the parent company was a client of his firm. The *Close* arbitrator not only knew that his firm represented a number of insurance companies and conducted an insurance defense practice, but also had immediate and frequent access to material that would have made him aware that his firm represented the arbitrating party in other matters while the arbitration was occurring. The arbitrators in both cases were members of their respective firms at the time of the arbitration. From such facts a reasonable person could believe they might be biased toward the arbitrating party that provided remuneration to the law firms in which they had a present pecuniary interest.

■ An impression of possible bias in the arbitration context means that one could reasonably form a belief that an arbitrator was biased for or against a party for a particular reason. In this case, Betz urges that because Sandborg was a partner in the Bronson firm at the time it represented the Pankow entities, it is reasonable to believe that *for that reason* he might be biased in Pankow's favor. Certainly on those facts *alone*, an inference arises that Sandborg personally knew Pankow and/or had worked on his litigation, was privy to confidential information and was therefor biased in Pankow's favor.

However, when *all* the facts are known, they do not suggest that Sandborg's former membership in the Bronson firm resulted in any bias favoring Pankow in the subject arbitration. It is undisputed that during the time of the Pankow entity litigation the San Francisco office of the Bronson firm varied between 127 and 147 attorneys. At the time of the arbitration Sandborg was no longer a member of the Bronson firm, he had never met Pankow and did not know him, and he was unaware that the Bronson office had ever represented the Pankow entities. Finally, there is no evidence that the Bronson firm ever represented the Pankow entities in any matter other than the single action concerning insurance coverage. Under these circumstances, it cannot reasonably be inferred that Sandborg entertained any bias favoring Pankow. In other words, any impression of bias arising from Betz's initial undisputed showing was dispelled.

Betz contends that if Sandborg had conducted a conflicts check prior to his appointment, he would have uncovered the Bronson connection with Pankow and either recused himself or given her ground to challenge him. There are two problems with this contention. First, a conflicts check of Sandborg's personal clients or those upon whose cases he had worked, would not have revealed the Bronson/Pankow connection. Second, Betz does not adequately explain how a former member of a law firm who is now competing with it can accomplish a client check of the former firm. The Bronson office had no obligation to provide Sandborg with a list of its current or former clients, and could not be compelled to do so. The AAA rules require arbitrators to make a *reasonable* effort to inform themselves of past financial, business or professional relationships which might reasonably create an appearance of partiality or bias. An attorney/arbitrator has not failed to make such a reasonable effort if he does not have access to files that might reveal a past relationship of the attorney's prior law firm of which the attorney had no personal knowledge. In short, Sandborg cannot be faulted

for failing to disclose facts of which he was unaware. However, his prior membership in the Bronson firm was disclosed.[4]

"It is also important to note, especially in the context of the present case, that the facts and circumstances bearing on the [arbitrator's] possible partiality must be considered as of the time the motion is brought. 'The standard . . . is whether a reasonable person knowing all of the facts and looking at the circumstances *at the present time* would question the impartiality of the [arbitrator].' [Citation.]" (*United Farm Workers of America* v. *Superior Court* (1985) 170 Cal.App.3d 97, 105 [216 Cal.Rptr. 4].)

We emphasize that our decision addresses only a *post*award challenge to an arbitrator where we have concluded that no impression of possible bias exists because of the arbitrator's total lack of awareness that his former law firm had once represented business entities in which one of the litigants had an interest. We express no opinion on *pre*arbitration challenges to designated arbitrators.

The judgment is reversed.

Peterson, P. J., and King, J., concurred.

A petition for a rehearing was denied February 17, 1995, and respondent's petition for review by the Supreme Court was denied April 19, 1995. Mosk, J., and George, J., did not participate therein.

---

[4]Section 1281.9 was added to the Code of Civil Procedure effective January 1, 1995, which requires neutral arbitrators to disclose: "The names of any prior or pending cases involving any party to the arbitration agreement or the lawyer for a party for which the proposed neutral arbitrator served or is serving as neutral arbitrator, and the results of each case arbitrated to conclusion, including the date of the arbitration award, identification of the prevailing party, the names of the parties' attorneys, if known, and the amount of monetary damages awarded, if any." The statute also provides for disqualification of any neutral arbitrator that fails to comply with its provisions.