94 F.3d 1346
 96 Cal. Daily Op. Serv. 6673, 96 Daily Journal
D.A.R. 10,937
APUSENTO GARDEN (GUAM) INC., formerly known as Taiyo
Development (Guam) Inc., Plaintiff-Appellant,
v.
SUPERIOR COURT OF GUAM, Respondent,
and
Inland Builders Corporation, Real-party-in-interest-Appellee.
 No. 93-17296.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 8, 1995.
Decided Sept. 6, 1996.
 
 Kevin M. Fong, Pillsbury Madison & Sutro, San Francisco, California, Thomas C. Sterling, Klemm, Blair, Sterling & Johnson, Agana, Guam, for plaintiff-appellant.
 Garry W. Morse, Carlsmith Ball Wichman Case & Ichiki, Agana, Guam, for defendant-appellee.
 Appeal from the United States District Court for the Territory of Guam, Appellate Division, Munson,* Chief Judge, Rafeedie,** and Lamorena,*** Judges, Presiding. D.C. No. CV-93-00042-MRL.
 Before: HUG, Chief Judge, and THOMPSON, and O'SCANNLAIN, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 In resolving this appeal from an arbitration award, we must examine the mandamus jurisdiction of the federal district court over the Superior Court of the Territory of Guam.
 
 
 2
 * Apusento Garden (Guam) Inc. ("Apusento Garden") appeals the denial of its petition for a writ of mandamus by the Appellate Division of the United States District Court for the District of Guam (the "appellate division"). Apusento Garden petitioned the district court for a writ of mandamus to vacate an order of the Guam Superior Court, which in turn had vacated an approximately $5.7 million arbitration award in Apusento Garden's favor.
 
 
 3
 In 1988, Apusento Garden and Inland Builders Corporation ("IBC") entered into a contract for the construction of an apartment complex in Guam. The contract provided for arbitration of all disputes in accordance with the rules promulgated by the American Arbitration Association. In 1990, IBC filed a complaint against Apusento Garden. Apusento Garden responded by demanding arbitration under the terms of the contract.
 
 
 4
 After twenty-eight witnesses and forty-seven days of testimony, the arbitrator awarded Apusento Garden approximately $5.7 million. Apusento Garden subsequently filed a motion to confirm the award with the superior court, pursuant to section 2116 of the Guam Civil Procedure Code. IBC objected and filed a motion to vacate the award. IBC asserted that the award should be vacated because the arbitrator failed to disclose that both he and an expert witness for Apusento Garden were limited partners in a partnership that owned an apartment complex in Hawaii. Both the arbitrator and the expert witness denied having any knowledge of the other's interest in the partnership, and IBC proffered no evidence suggesting that either party had such knowledge. By coincidence, three attorneys in the firm representing IBC also were limited partners in the partnership.
 
 
 5
 On April 15, 1993, the superior court granted IBC's motion to vacate the award. The superior court found that the arbitrator's relationship with Apusento Garden's expert created an "impression of possible bias," as outlined in Commonwealth Coatings Corp. v. Continental Cas. Co., 393 U.S. 145, 149, 89 S.Ct. 337, 339, 21 L.Ed.2d 301 (1968), and concluded that the arbitrator's "failure to disclose his business relationship with [Apusento Garden's expert] serves as an independent basis for vacating the arbitration award in this case." The court also observed that the limited partnership owned an apartment complex similar to the apartment complex that was the subject of the arbitration; the court stated that "it would not be improbable for a reasonable person to conclude that an arbitrator, who is a part owner of an apartment project, [might] lack complete objectivity in regard to a dispute involving an owner of an apartment complex and the contractor hired."
 
 
 6
 Apusento Garden filed a petition for a writ of mandamus with the district court challenging the superior court's order. Apusento Garden's petition asserted that the district court had "jurisdiction over this matter pursuant to 48 U.S.C. section 14.32, the All Writs Act (28 U.S.C. § 1651) and Guam Code of Civil Procedure section 1085." The district court, sitting as a three-judge appellate panel, considered the petition under the All Writs Act. The court applied the five-factor test promulgated in Bauman v. U.S. Dist. Ct., 557 F.2d 650, 654-55 (9th Cir.1977), and denied the petition in a split decision. In discussing the third Bauman factor--whether the lower court's order was "clearly erroneous as a matter of law"--the majority stated that it was inclined to agree with Apusento Garden that the arbitrator's relationship with the expert witness alone probably did not create an "impression of bias," but observed that the superior court had applied a "totality of the circumstances" analysis and concluded that the court's decision was a factual determination that was not erroneous as a matter of law. The dissenting judge, however, opined that the superior court's analysis was inconsistent with its conclusion that the arbitrator's relationship with the expert witness created "an independent basis" for vacating the arbitration award--a conclusion that the dissent considered to be a clear error of law.
 
 
 7
 Apusento Garden timely appeals.
 
 II
 
 8
 As a threshold matter, we must decide whether the appellate division erred in applying the Bauman factors instead of Guam's statutory mandamus standard.
 
 
 9
 The All Writs Act grants "all courts created by Acts of Congress" the authority to issue writs, including writs of mandamus. 28 U.S.C. § 1651. The Bauman factors are general guidelines that "serve only as a useful starting point" for determining whether this court should issue a writ of mandamus to a district court under the All Writs Act. See In re Cement Antitrust Litig., 688 F.2d 1297, 1301 (9th Cir.1982) (citing Bauman, 557 F.2d at 654-55), aff'd without opinion sub nom. Arizona v. U.S. Dist. Ct., 459 U.S. 1191, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983).[1]
 
 
 10
 Guam law authorizes "any court, except a commissioner's or police court" to issue a writ of mandamus
 
 
 11
 to any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board, or person.
 
 Guam Civ.Proc.Code § 1085 (Supp.1974).[2]
 
 12
 The District Court of Guam has jurisdiction as a federal district court and as a local appellate court. See 48 U.S.C.A. § 1424(b) (West 1987) ("[t]he District Court of Guam shall have the jurisdiction of a district court of the United States"); id. § 1424-3(a) ("the District Court of Guam shall have such appellate jurisdiction over the local courts of Guam as the legislature may determine"). This court has held that "Section 62 of the Guam Code of Civil Procedure defines the appellate jurisdiction of the District Court of Guam when it sits as a local court reviewing Guam superior court decisions." Ball v. Tokyu Land Corp., Micronesia, 724 F.2d 1403, 1404 (9th Cir.1984); id. at 1404-05 (references to the Guam Supreme Court in section 62 apply to the appellate division because the Guam legislature's delegation of authority to the Guam Supreme Court was struck down in Guam v. Olsen, 431 U.S. 195, 97 S.Ct. 1774, 52 L.Ed.2d 250 (1977)).
 
 
 13
 Section 62 provides that the appellate division "shall have jurisdiction of appeals from the judgments, orders and decrees of the Superior Court in criminal ... and in civil causes and proceedings.... [The appellate division] shall also have the power to issue writs of mandamus." Guam Civ.Proc.Code § 62. Because the Government of Guam promulgated section 62 verbatim from the California Code of Civil Procedure in 1933, California cases applying this mandamus standard are persuasive authority in Guam cases. Morta v. Korea Ins. Corp., 840 F.2d 1452, 1459 (9th Cir.1988) (the first territorial legislature of Guam codified and enacted these provisions in 1953).
 
 
 14
 In Cruz v. Abbate, this court noted that the appellate divisions's authority to issue a writ of mandamus to the Guam Superior Court derives from the All Writs Act. 812 F.2d 571, 573 (9th Cir.1987) ("The appellate division's authority here is grounded in the All Writ's Act...."). In the appeal before us, Apusento Garden contends that the district court erred by applying the Bauman factors because Cruz does not preclude the district court, when it sits as a local appellate court reviewing a Guam Superior Court decision, from applying the mandamus provisions found in the Guam Civil Procedure Code. We agree with such contention.
 
 
 15
 Cruz is not controlling here for the simple reason that Cruz did not decide whether the appellate division should apply Guam's mandamus standards instead of the Bauman factors. Cruz did not even discuss Bauman or Guam Civil Procedure Code §§ 1085, 1086. Rather, Cruz referred to the All Writs Act as part of an effort to ascertain the propriety of a unilateral action taken by the presiding judge of the appellate division.
 
 
 16
 The Cruz court reversed the appellate division's dismissal of a mandamus petition on a purely jurisdictional ground; the court held that the appellate division's presiding judge could not unilaterally dispose of a mandamus petition challenging the assignment of criminal cases by the Guam superior court. Based on this improper procedure by the presiding judge, the Cruz court remanded for consideration of the petition by the three judges who statutorily constitute the appellate division. See 48 U.S.C.A. § 1424-3(b).
 
 
 17
 Because the Cruz court did not decide the merits of the mandamus petition, the court had no occasion to discuss the Bauman factors, let alone the issue of whether Guam's mandamus provisions should be applied. See United States v. Vroman, 975 F.2d 669, 672 (9th Cir.1992) (citation omitted) (circuit precedent not controlling where prior panel did not consider issue decided by later panel), cert. denied, 507 U.S. 996, 113 S.Ct. 1611, 123 L.Ed.2d 172 (1993); see also United States v. Gonzalez, 981 F.2d 1037, 1038, 1042 n. 4 (9th Cir.1992) (Kozinski, J., dissenting) (same).[3] The Cruz court looked to the All Writs Act only to determine whether that statute vested jurisdiction in the presiding judge to pass on the merits of a mandamus petition without consulting with the other two judges of the appellate division. Thus, Cruz does not stand for the proposition that the appellate division must apply the Bauman factors when deciding whether to grant mandamus relief.
 
 
 18
 Just as it is appropriate for federal courts (sitting as federal courts) in this circuit to apply the Bauman factors, it is likewise appropriate for the Guam appellate division (sitting as the Guam Supreme Court) to apply Guam's own mandamus standard. In short, because the appellate division only has jurisdiction as a local appellate court to review the superior court's vacation of the arbitration award, the appellate division should apply the mandamus standard enacted by Guam. See Pennsylvania Bureau of Correction v. United States Marshals, 474 U.S. 34, 43, 106 S.Ct. 355, 361, 88 L.Ed.2d 189 (1985) ("Where a statute specifically addresses the particular issue at hand, it is that authority, not the All Writs Act, that is controlling."). Accordingly, we conclude that the appellate division erred in failing to apply Guam's own mandamus provisions.
 
 III
 
 19
 We must, therefore, reach the question of whether Apusento Garden is entitled to a writ of mandamus under the Guam statute, which authorizes a court to issue a writ of mandamus when (1) the petitioner has "no plain, speedy, and adequate remedy in the ordinary course of law," and (2) the court in question has abused its discretion. See Guam Civ.Proc.Code §§ 1085, 1086; Gertner v. Superior Court, 20 Cal.App.4th 927, 25 Cal.Rptr.2d 47, 49 (1993) (citations omitted) ("mandamus does lie where [judicial] discretion is abused, or where under the facts the court's discretion can be exercised in only one way"); National Union Fire Ins. Co. v. Superior Court, 252 Cal.App.2d 568, 60 Cal.Rptr. 535, 538-39 (1967) (applying California's mandamus provisions to set aside order vacating arbitration award).
 
 
 20
 * Section 1086 of the Guam Civil Procedure Code provides that the writ of mandamus "must be issued in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law." Guam Civ.Proc.Code § 1086. Because Guam enacted this provision in 1933 verbatim from the California Code of Civil Procedure, California cases interpreting this provision constitute persuasive authority. Morta, 840 F.2d at 1459.
 
 
 21
 Apusento Garden contends that it has no speedy and adequate remedy because the superior court's order vacating the arbitration award was not appealable until after a second arbitration hearing. IBC argues that merely requiring a party to go through a second arbitration hearing is insufficient to justify the issuance of a writ of mandamus.
 
 
 22
 Apusento Garden is correct that the superior court's order vacating the arbitration award is not an immediately appealable final order. As the appellate division properly concluded, orders vacating arbitration awards are not appealable under sections 62 and 936.1 of the Guam Civil Procedure Code. When confronted with non-appealable vacations of arbitration awards, the California courts have held that a writ of mandamus is appropriate. See, e.g., National Union, 60 Cal.Rptr. at 538-39. In National Union, the California Court of Appeal explained:
 
 
 23
 [T]he result of the lower court's order is to require both parties to go through another arbitration hearing and then, in the event of an award contrary to the original award, another proceeding in superior court to vacate such second award, followed by an appeal in the event the superior court, contrary to our view of the law, should rule that the first award was not binding upon the parties.
 
 Id., 60 Cal.Rptr. at 538 (1967).[4]
 
 24
 Thus, we conclude that Apusento Garden qualifies for mandamus relief because it has "no plain, speedy, and adequate remedy in the ordinary course of law." Guam Civ.Proc.Code § 1086.B
 
 
 25
 Apusento Garden contends that the superior court abused its discretion in vacating the arbitration award. Specifically, Apusento Garden argues that the superior court erred as a matter of law when it determined that an "impression of possible bias" existed because the arbitrator and Apusento Garden's expert witness were both limited partners in an apartment complex in Hawaii.
 
 
 26
 To determine whether the superior court erred by vacating the arbitration award, we look to the applicable law and case precedent. The arbitration was conducted under Guam law. Pursuant to Guam's arbitration statute, the superior court is required to confirm an arbitration award unless it finds grounds to vacate, modify, or correct the award. See Guam Civ.Proc.Code § 2116. An arbitration award may be vacated only "[w]here there was evident partiality or corruption in the arbitrators." Guam Civ.Proc.Code § 2117 (emphasis added). Because Guam's arbitration statute was derived from California law, we look to California case law as persuasive authority for interpreting the statute. See Morta, 840 F.2d at 1459.
 
 
 27
 To determine whether there is "evident partiality," based on an arbitrator's failure to disclose a prior business relationship with "a party, its counsel or a witness," California courts have adopted the "impression of possible bias" standard first articulated by the Supreme Court in Commonwealth Coatings, 393 U.S. at 149, 89 S.Ct. at 339; see Betz v. Pankow, 31 Cal.App.4th 1503, 38 Cal.Rptr.2d 107, 110 (1995); Neaman v. Kaiser Found. Hosp., 9 Cal.App.4th 1170, 11 Cal.Rptr.2d 879, 883 (1992). The Court in Commonwealth Coatings held that an arbitration award must be vacated if the arbitrator has failed to disclose any dealings that create an "impression of possible bias." See 393 U.S. at 149, 89 S.Ct. at 339; see also Britz, Inc. v. Alfa-Laval Food & Dairy Co., 34 Cal.App.4th 1085, 40 Cal.Rptr.2d 700, 711 (1995) (internal quotation marks and citations omitted) (under this standard, "an arbitrator is under a legal duty to disclose to the parties any dealings that might create an impression of possible bias"), cert. denied, --- U.S. ----, 116 S.Ct. 774, 133 L.Ed.2d 726 (1996). "The test is an objective one--whether such an impression [of possible bias] is created in the eyes of the hypothetical reasonable person." Betz, 38 Cal.Rptr.2d at 110 (citations omitted). This court uses a similar standard for determining "evident partiality" in nondisclosure cases. See Woods v. Saturn Distrib. Corp., 78 F.3d 424, 427 (9th Cir.1996) (observing that standard for determining "evident partiality" in nondisclosure cases is whether there is a "reasonable impression of bias"), petition for cert. filed, 65 U.S.L.W. 3085 (U.S. July 16, 1996) (No. 96-86); Schmitz v. Zilveti, 20 F.3d 1043, 1046-47 (9th Cir.1994) (same).
 
 
 28
 Here, the superior court, relying on Commonwealth Coatings, held that a reasonable "impression of possible bias" existed because the arbitrator failed to disclose that he and Apusento Garden's expert witness were both limited partners in a partnership that owned an apartment complex in Hawaii, unrelated to the arbitration in Guam.
 
 
 29
 Whether this type of financial relationship could create a reasonable "impression of possible bias" requiring disclosure is an issue of first impression in the Ninth Circuit, Guam, and California. In a similar situation, however, the Eleventh Circuit held that no impression of bias was created. Lozano v. Maryland Cas. Co., 850 F.2d 1470 (11th Cir.1988), cert. denied, 489 U.S. 1018, 109 S.Ct. 1136, 103 L.Ed.2d 197 (1989). In Lozano, each party designated an arbitrator. The two designated arbitrators then selected a third "neutral" arbitrator. The neutral arbitrator failed to disclose that he was an investor in two real estate limited partnerships with the plaintiff's arbitrator. The Eleventh Circuit stated:
 
 
 30
 "The record herein indicates that [the plaintiff's designated arbitrator] and [the neutral arbitrator] had each invested in a real estate transaction which was controlled by a third party. Their only obligation was to furnish money in accordance with the terms of the limited partnership agreement. There was nothing that one could do to curry favor with the other. Except for the size of the transaction and the number of investors, this is no different than two individuals buying the same issue of corporate stock or investing in the same mutual fund. The court finds nothing in this relationship which would be the basis for a disclosure by either [the plaintiff's designated arbitrator] or [the neutral arbitrator]."
 
 
 31
 Id. at 1471 (quoting district court).
 
 
 32
 The reasoning in Lozano is compelling. In the present case, the arbitrator and Apusento Garden's expert witness were both passive investors in a limited partnership. The partnership was unrelated to the subject of the arbitration. As in Lozano, "[t]here was nothing that one could do to curry favor with the other." Id. In addition, both the arbitrator and Apusento Garden's expert witness denied any knowledge of their financial relationship and no evidence has been advanced suggesting that they did have knowledge of the relationship.
 
 
 33
 Further reinforcing our conclusion that the relationship between the arbitrator and Apusento Garden's expert does not create a reasonable "impression of possible bias" is the fact that several members of IBC's law firm also were limited partners in the partnership. Their investment in the partnership, like that of Apusento Garden's expert witness, does not form the basis for finding a reasonable "impression of possible bias" attributable to the arbitrator. See Lozano, 850 F.2d at 1471-72; see also Commonwealth Coatings, 393 U.S. at 149, 89 S.Ct. at 339. Accordingly, we conclude that the superior court erred as a matter of law by finding that the arbitrator's failure to disclose his limited partner relationship with Apusento Garden's expert could result in an objectively reasonable "impression of possible bias."
 
 
 34
 Without this basis for finding an "impression of possible bias," the remaining indicia of possible bias alluded to by the superior court in its analysis, including the fact that the subject of the arbitration was an apartment complex and that the limited partnership owned an apartment complex, also fail to create a reasonable impression of possible bias. See Commonwealth Coatings, 393 U.S. at 149, 89 S.Ct. at 339; Betz, 38 Cal. Rptr.2d at 110; see also Schmitz, 20 F.3d at 1046.
 
 
 35
 In sum, we conclude that the superior court abused its discretion in vacating the arbitration award.
 
 IV
 
 36
 For the foregoing reasons, we reverse the district court's denial of mandamus relief and remand with instructions to issue a writ of mandamus ordering the superior court to reinstate the arbitration award.
 
 
 37
 REVERSED and REMANDED.
 
 
 
 *
 Honorable Alex R. Munson, Chief United States District Judge for the Northern Mariana Islands, sitting by designation
 
 
 **
 The Honorable Edward Rafeedie, United States District Judge for the Central District of California, sitting by designation
 
 
 ***
 The Honorable Alberto C. Lamorena III, Judge, Superior Court of Guam, sitting by designation
 
 
 [1]
 In determining whether to issue a writ of mandamus under the All Writs Act, the court balances the following five factors ("the Bauman factors"):
 (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief he desires;
 (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal;
 (3) whether the district court's order is clearly erroneous as a matter of law;
 (4) whether the district court's order is an oft repeated error or manifests persistent disregard for the federal rules; and
 (5) whether the district court's order raises new and important problems or issues of law of first impression.
 In re Cement, 688 F.2d at 1301 (citing Bauman, 557 F.2d at 654-55). Although all five factors need not be satisfied, "it is clear that the third factor, the existence of clear error as a matter of law, is dispositive." Executive Software North Am., Inc. v. U.S. Dist. Ct., 24 F.3d 1545, 1551 (9th Cir.1994) (citations omitted).
 
 
 [2]
 The mandamus provisions of the Guam Civil Procedure Code were amended and renumbered in 1993. Because the amendments took effect after the commencement of this action, we apply the pre-amendment provisions. See Guam Civ.Proc.Code § 1103 (1993)
 
 
 [3]
 In fact, rather than reciting the Bauman factors, the Cruz court simply stated that the appellate division, on remand, "shall determine whether an abuse of discretion or constitutional violation has occurred. If so, it may use its supervisory powers to correct the matter." Cruz, 812 F.2d at 574
 
 
 [4]
 See also 8 Witkin, California Procedure: Extraordinary Writs § 116, at 751-52 (3d ed. 1985) (citing National Union, 60 Cal.Rptr. at 538-39) ("Where there is no direct appeal from a court's adverse ruling, and the aggrieved party would be compelled to go through a trial and appeal from a final judgment, the unreasonableness of the delay and expense is apparent. As in prohibition, the remedy by appeal is usually deemed inadequate in these situations, and mandamus is allowed.")