Filed 5/13/26  Gonzalez v. The Morning Star Institute CA3

<u>NOT TO BE PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| SUJEI GONZALEZ,<br>        Plaintiff and Respondent,<br><br>v.<br><br>THE MORNING STAR INSTITUTE INC. et al.,<br>        Defendants and Appellants. | C102578<br><br>(Super. Ct. No. 34-2019-00265189-CU-WT-GDS) |

Appellants the Morning Star Institute, Inc. and the Morning Star Company (together, Morning Star) appeal from a judgment entered after the trial court confirmed an arbitration award in favor of respondent Sujei Gonzalez and denied Morning Star's petition to vacate the award.  An arbitrator awarded Gonzalez over $8 million in damages and attorneys' fees on her claims of unlawful retaliation and wrongful termination against Morning Star, her former employer.  In denying Morning Star's petition to vacate the award, the trial court determined that the company had not substantiated its claim of arbitrator bias.  We agree that Morning Star has failed to show any reasonable impression of possible bias by the arbitrator.  We therefore affirm.

1

BACKGROUND

I.

Gonzalez worked as a director for Morning Star, a large agricultural food processing company. Part of Gonzalez's role was to internally promote Morning Star's self-management organizational structure, under which employees managed themselves and autonomously discharged their duties. According to the company's founder and owner, Chris Rufer, this organizational model was rooted in part in libertarian principles of individual responsibility. Gonzalez claimed that, in the course of her duties, she learned of or witnessed repeated acts of what she believed to be sexual harassment by another employee. She reported the incidents to Rufer, who was designated as the sole employee responsible for investigating allegations of sexual harassment. Gonzalez claimed that Rufer declined to investigate, told her to work things out with the alleged harasser, and terminated her soon thereafter.

In 2019, Gonzalez filed a complaint in the trial court against Morning Star, alleging four causes of action under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.): sexual harassment and hostile work environment (Gov. Code, § 12940, subd. (j)), retaliation (Gov. Code, § 12940, subd. (h)), failure to prevent sexual harassment and retaliation (Gov. Code, § 12940, subd. (k)), and wrongful termination in violation of public policy. In February 2020, pursuant to an arbitration agreement, the parties proceeded to arbitrate these claims and selected the Honorable Robert C. Hight (Ret.) as the arbitrator. In 2021, witnesses testified and evidence was presented at arbitration hearings, which were not transcribed or recorded.

Over the course of the four-year arbitration, the arbitrator issued several rulings that collectively comprise the arbitration award. In an Interim Arbitration Award, issued in August 2021, the arbitrator determined that Gonzalez had established each of her claims except for her allegations of wrongful termination in violation of public policy, as

2

to which further briefing was required. In addressing Gonzalez's claim of a hostile work environment, the arbitrator recognized the relevance of corporate culture and noted: "As Claimant asserts, Respondents' libertarian policies created a workplace where enforcement of harassment, discrimination and retaliation protections was difficult to provide, because it resulted in a workplace where 'anything goes.' "

In a May 2022 Revised Interim Arbitration Award, the arbitrator amended his determination to reflect that Gonzalez had dropped her claim for sexual harassment and that, therefore, her hostile work environment and failure to prevent harassment claims had likewise been dismissed. The arbitrator found that Gonzalez had established her claim of wrongful termination in violation of public policy and reaffirmed his previous finding that her claims for retaliation and failure to prevent retaliation were meritorious. The 26-page ruling awarded Gonzalez compensatory damages of $405,599 for past economic harm, $1,430,618 for future economic damages, and $750,000 for past emotional distress. The arbitrator concluded that Gonzalez was not entitled to damages for future emotional distress but should receive punitive damages in an amount to be determined. In discussing Gonzalez's entitlement to punitive damages, the arbitrator found that Rufer's behavior was "completely contrary to the utopian self-management principles and environment he espoused in the Company handbook." The arbitrator further stated that an award of punitive damages was "appropriate to ensure that Mr. Rufer realizes that his self-management world is flawed and that complaints by employees of harassment and retaliation must be addressed seriously."

After further hearings, in August 2023 the arbitrator issued an Interim Punitive Damages Award. In that 16-page ruling, the arbitrator determined that all five reprehensibility factors (*State Farm Mut. Auto. Ins. Co. v. Campbell* (2003) 538 U.S. 408, 419) were "present but were very low" and that, given the "substantial compensatory award," a one-to-one ratio was appropriate in setting punitive damages. Accordingly, the

3

arbitrator awarded Gonzalez $1,836,217 in punitive damages, the equivalent of her total compensatory award, less the emotional distress damages.

In a February 2024 ruling not technically part of the arbitration award but mentioned as part of Morning Star's arguments on appeal, the arbitrator denied Morning Star's October 2023 motion for nonsuit and motion to dismiss the Morning Star Company. The motion to dismiss was based on an argument that only the Morning Star Institute, not the Morning Star Company, was Gonzalez's employer during the relevant time period. The arbitrator found the motion for nonsuit untimely and deemed the motion to dismiss forfeited in light of the failure to seek dismissal for roughly a year-and-a-half after Morning Star had expressly acknowledged the employer-entity issue.

In April 2024, the arbitrator issued a Corrected Final Award on Gonzalez's motion for attorneys' fees and costs incurred in the arbitration. Recognizing the four years of "intense litigation" required to complete the arbitration, the interest in promoting the public policies underlying FEHA through fully compensatory fee awards, and the high level of success achieved despite the dismissal of the sexual harassment claims—which the arbitrator found clearly related to proving the retaliation claim—the arbitrator determined that Gonzalez's counsel were entitled to compensation for all hours claimed. The arbitrator also concluded that the hourly rates requested for each of Gonzalez's attorneys were substantiated by their personal and supporting declarations, which the arbitrator found more compelling than Morning Star's evidence in opposition. After applying a lodestar multiplier of 1.35, the arbitrator awarded Gonzalez $3,891,419.88 for her attorneys' fees, plus $44,085.16 in costs. Altogether, the arbitration award totaled $8,357,939.04.

II.

Returning to the trial court, Gonzalez filed a petition to confirm the arbitration award, while Morning Star moved to vacate it under the California Arbitration Act (Code

4

Civ. Proc., § 1280 et seq.).[1]  Morning Star sought to vacate the award pursuant to section 1286.2, subdivision (a)(3), claiming that its rights were substantially prejudiced by arbitrator misconduct that created a reasonable impression of possible bias against Morning Star and its founder and owner, Rufer.  Specifically, Morning Star's petition argued that the arbitrator's language and rulings reflected animus toward Rufer's libertarian political affiliation and beliefs.

Morning Star attached to its petition a declaration by Rufer, averring that he has been a major donor to libertarian candidates, political committees, and organizations; that he has served on boards of organizations supporting libertarian ideals; and that he has engaged in high-profile litigation against government regulations that he believes infringe on personal liberty and economic freedom.  Rufer's declaration further explained Morning Star's self-management organizational model as follows:  "Unlike a typical hierarchical corporate structure (CEO, executive vice president, vice president, manager, and so on down the chain), Defendants' organizational model empowers all employees to share responsibility for management functions.  Simply stated, self-management empowers individuals by entrusting them with the authority and autonomy to plan and coordinate their work with other colleagues to pursue the mission of each enterprise. [¶¶]  Although self-management is not an exclusively libertarian management philosophy, it stems from similar values and shares a foundational theme:  the pursuit of a common mission by elevating individual responsibility over traditional coercive bureaucratic force."

Morning Star also attached to its petition four of Gonzalez's briefs submitted to the arbitrator before the issuance of the Revised Interim Arbitration Award.  Each of these briefs contained express references to Rufer's libertarian philosophy and Morning

---

[1]  Undesignated statutory references are to the Code of Civil Procedure.

Star's self-management structure, which Gonzalez argued was rooted in that philosophy and created an environment where sexual harassment would not be addressed.

In opposition to the petition to vacate, Gonzalez likewise filed exhibits and declarations, including a declaration from her lead counsel in which he stated that Rufer, on direct examination at an arbitration hearing, "described, among other things, Morning Star's 'self-management' system's foundation in libertarian philosophy or principles." Gonzalez's counsel further averred that "[a]t the arbitration hearing, nobody made any reference to political affiliation, political action, political party, or politics in any way."

As one of her exhibits, Gonzalez attached excerpts of the Morning Star Institute's handbook of policies that was in effect during her employment. In at least two sections, the handbook described the company's organizational model, which it referred to as "Mission-Focused 'Self-Management.' " The handbook stated: "Mission-Focused 'Self-Management' brings organizational structure to an enterprise spontaneously. Individual Colleagues, directed by our Personal Commercial Mission, are principally responsible for organizing their relationships. Their Personal Commercial Mission is our 'boss.' The managerial functions of planning, organizing, staffing, directing and controlling are the personal responsibility of each Colleague."

In August 2024, after a hearing, the trial court issued an order denying Morning Star's petition to vacate and a separate order granting Gonzalez's petition to confirm the arbitration award. The court found that Morning Star "failed entirely to show any basis for vacating the arbitration award." As to Morning Star's claim that language and punctuation in the arbitrator's written rulings evinced possible anti-libertarian bias, the court found the arbitrator's isolated references to " 'self-management,' " " 'libertarian policies,' " and " 'utopian self-management principles' " did not show an appearance of bias "in any manner." These references, the court explained, came from Morning Star's own literature and Rufer's own testimony, which described the company's " 'self-

6

management' " system and its foundation in libertarian philosophy. There was also no basis to conclude that an objective, reasonable person would know that a reference to " 'self-management' " was a reference to libertarianism, and there was no evidence that the arbitrator was aware of Rufer's libertarian political activity. And while Gonzalez's arbitration briefs may have included references to " 'libertarian philosophy' " and Morning Star's self-management style based on that philosophy, that had no tendency to show bias on the arbitrator's part.

The trial court also rejected Morning Star's claim that the arbitrator's consistently adverse rulings supported its claim of bias. The court explained that, contrary to Morning Star's argument, the arbitrator ruled in Morning Star's favor on a variety of issues; and in any event, courts are not permitted to review the merits of an arbitrator's award, even if erroneous. The court entered judgment confirming the arbitration award.

Gonzalez moved to recover attorneys' fees and costs incurred both at the end of the arbitration proceedings and in litigating the post-arbitration cross-petitions to confirm and to vacate. The trial court denied the motion as to the fees incurred during arbitration, granted the motion as to the post-arbitration fees and costs, and entered judgment on the fee award.

Morning Star timely appealed from both the judgment confirming the arbitration award and the judgment awarding fees.

DISCUSSION

"When parties agree to private arbitration, they bargain for very limited judicial review." (*FCM Investments, LLC v. Grove Pham, LLC* (2023) 96 Cal.App.5th 545, 549 (*FCM*).) Generally speaking, "parties to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) Thus, "[m]ost legal errors in arbitration are not reviewable." (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 367.) Even "the existence of an error of law

7

apparent on the face of [an] award that causes substantial injustice does not provide grounds for judicial review." (*Moncharsh*, at p. 33.)

These limits on judicial review, however, are subject to statutory exceptions that "protect against error that is so egregious as to constitute misconduct or so profound as to render the process unfair." (*Heimlich v. Shivji, supra*, 7 Cal.5th at p. 368.) As relevant here, a court "shall vacate" an award if it determines that the rights of a party "were substantially prejudiced by misconduct of a neutral arbitrator." (§ 1286.2, subd. (a)(3).) "Misconduct includes circumstances creating a reasonable impression of possible arbitrator bias." (*FCM, supra*, 96 Cal.App.5th at p. 549; see *id.* at p. 555 ["While arbitration awards are 'nearly immune' from attack, 'one of the limited grounds for challenge is bias on the part of the arbitrator' "].)

"Arbitrators are held to the same standard as judges—'they should be disqualified if a person aware of the facts might reasonably entertain a doubt that the arbitrator would be able to be impartial.' " (*FCM, supra*, 96 Cal.App.5th at p. 555; see § 170.1, subd. (a)(6)(A)(iii).) "Given inherent challenges of proving bias and the importance of maintaining public confidence in our justice system, a showing of actual bias is not required." (*FCM*, at p. 555.) "Instead, the test is whether a hypothetical reasonable person (i.e., a disinterested, well-informed, thoughtful member of the public) would form *an impression of possible bias* on the part of the arbitrator." (*Ibid.*; *Betz v. Pankow* (1995) 31 Cal.App.4th 1503, 1507-1508; accord, *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 389.)

" 'An impression of possible bias in the arbitration context means that one could reasonably form a belief that an arbitrator was biased for or against a party for a particular reason.' " (*Haworth v. Superior Court, supra*, 50 Cal.4th at p. 389, italics omitted.) "The test is objective and fact-specific; there is no bright-line demarcation for the impression of bias, and each case must be considered in light of the particular facts

8

involved." (*FCM, supra*, 96 Cal.App.5th at p. 555; *Betz v. Pankow, supra*, 31 Cal.App.4th at p. 1508.)  "A party challenging an arbitration award and trial court judgment confirming that award bears the burden of establishing entitlement to relief." (*FCM*, at p. 552; see *id.* at p. 555 [party seeking to vacate arbitration award bears "burden to establish a reasonable impression of possible bias"].)

Where, as here, the material facts are undisputed, we review de novo a trial court's order denying a petition to vacate an arbitrator's award.  (*Valencia v. Mendoza* (2024) 103 Cal.App.5th 427, 442; *Bassett Unified School Dist. v. Superior Court* (2023) 89 Cal.App.5th 273, 287; see *Haworth v. Superior Court, supra*, 50 Cal.4th at pp. 383-388.)

In this case, Morning Star argues that the trial court erred in refusing to vacate the arbitration award because the record establishes an impression of the arbitrator's possible bias against Rufer's political affiliation and beliefs.  In Morning Star's view, language and punctuation in some of the arbitrator's written rulings, as well as the arbitrator's "unremittingly one-sided" decisions favoring Gonzalez, demonstrate the arbitrator's lack of impartiality.  We agree with the trial court that the record fails to support this claim.

With respect to the wording of the arbitrator's rulings, Morning Star points to three phrases and six punctuation choices appearing in the more than 70 pages of rulings the arbitrator issued in this case.  Morning Star initially takes issue with one reference by the arbitrator to the company's "libertarian policies" in the Interim Arbitration Award. As noted above, in finding Gonzalez's (later-dismissed) hostile work environment claims meritorious, the arbitrator stated:  "As Claimant asserts, Respondents' libertarian policies created a workplace where enforcement of harassment, discrimination and retaliation protections was difficult to provide, because it resulted in a workplace where 'anything goes.' "  Morning Star argues that this was a gratuitous reference to its corporate officer's political affiliation, raising the same impression of potential bias that would come from a

9

reference to a hypothetical officer's " 'progressive' or 'conservative' " or " 'Democrat' or 'Republican' policies."  While this very well may be so in a case where the nature of the company's policies was irrelevant to the claims at issue, here both parties agree that Morning Star's management policies were centrally relevant to Gonzalez's claims, and the undisputed evidence before the trial court was that the company itself described its policies as rooted in libertarian philosophy.  On direct examination during the arbitration, Rufer described Morning Star's self-management system's "foundation in libertarian philosophy or principles."  Rufer's trial court declaration likewise described self-management as "stem[ming] from similar values and shar[ing] a foundational theme" with libertarian management philosophy.  Morning Star's appellate reply brief also states that Rufer's "political beliefs influenced the organization of the Morning Star-affiliated companies in a self-management model."  Given all that, a "disinterested, well-informed, thoughtful member of the public" (*FCM*, *supra*, 96 Cal.App.5th at p. 555) would not see a lone reference by the arbitrator to the libertarian foundations of Morning Star's policies as gratuitous or indicative of animus toward libertarianism.

It is also relevant that the arbitrator mentioned Morning Star's "libertarian policies" in the portion of the Interim Arbitration Award analyzing the merits of Gonzalez's sexual harassment and hostile work environment claims.  As those claims turned on the nature of Gonzalez's work environment, a fully informed observer would have understood the arbitrator's reference as nothing more than a way to describe the lack of hierarchical management structure that, the arbitrator found, supported Gonzalez's claims that sexual harassment went unaddressed at Morning Star.  (See *FCM*, *supra*, 96 Cal.App.5th at p. 558 ["In evaluating arbitrator bias, we consider all relevant contextual facts"].)  Notably, in the Revised Interim Arbitration Award—following the recognition that Gonzalez had dismissed her sexual harassment and hostile work

10

environment claims—the arbitrator did not retain any reference to Morning Star's "libertarian policies."

Morning Star additionally directs our attention to the arbitrator's reference to "utopian self-management principles" and Rufer's "self-management world" in the Revised Interim Arbitration Award. Here, too, a fully informed, rational observer would not suspect political bias from the arbitrator's conclusion that, in failing to investigate Gonzalez's reports of sexual harassment, Rufer had acted "completely contrary to the utopian self-management principles and environment he espoused in the Company handbook." Nor would such an observer perceive political bias from the arbitrator's determination that an award of punitive damages would "ensure[] that Mr. Rufer realize[d] that his self-management world is flawed." We agree with the trial court that there is no reason to believe a disinterested observer would connect the phrases "self-management principles" or "self-management world" with libertarian politics, as the Revised Interim Arbitration Award includes no reference to libertarianism and the connection is not self-evident.

Finally, Morning Star cites two locations in the Interim Arbitration Award and four locations in the Revised Interim Arbitration Award where the arbitrator placed quotation marks around the term "self-management" so as to, in Morning Star's view, mock the company's organizational structure. Morning Star is correct that, in the Interim Arbitration Award, the arbitrator used quotation marks around his first two references to Morning Star's self-management organizational structure and style—but none of the ruling's 10 subsequent references does the same. And while the Revised Interim Arbitration Award contains four instances in which "self-management" appears in quotation marks, it also includes 20 unadorned references to that term. Reading these rulings as a whole, we see no basis for concluding that the arbitrator's intermittent use of quotation marks was for any purpose other than to indicate the use of a term to which a

11

party had ascribed a unique meaning. Indeed, Morning Star's own handbook repeatedly used quotation marks around the term, for precisely the same reason.

Morning Star further claims that the arbitrator's written rulings should be understood as growing out of and reflecting an environment of anti-libertarian bias created by Gonzalez's counsel's use of inflammatory and denigrating language in their briefs. Morning Star, however, offers no persuasive reason for why *counsel's* words or beliefs could reasonably be imputed to the *arbitrator*.

Beyond its brief discussion of the arbitrator's language and punctuation, Morning Star devotes the bulk of its appellate briefs to criticizing the arbitrator's adverse rulings, arguing that their one-sided nature "corroborate[s]" the impression of possible bias. Morning Star acknowledges that an "arbitrator's decision is not generally reviewable for errors of fact or law" (*Moncharsh v. Heily & Blase*, *supra*, 3 Cal.4th at p. 6), but maintains that "at some point, an arbitrator's rulings collectively become so egregious that they provide corroborating evidence of bias." Morning Star cites no authority for the latter proposition, which would seem to require an analysis of the merits that would contravene the former. Moreover, given that we have found no support for Morning Star's claim of potential political bias based on the language used in the rulings, there is nothing here to "corroborate." Thus, adopting Morning Star's argument would require accepting that the arbitrator's adverse rulings, alone, created an appearance of bias—a proposition that has been firmly rejected by the courts. (*People v. Baker* (2021) 10 Cal.5th 1044, 1088 ["a court may be wrong, even repeatedly, without revealing any partiality"]; *Andrews v. Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781, 795-796 ["numerous and continuous rulings against a litigant, even when erroneous, form no ground for a charge of bias or prejudice"]; *Severson & Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938, 952 ["A trial court's rulings against a party, even if erroneous, do not, by themselves, support a charge of bias"]; *Blakemore v. Superior*

12

*Court* (2005) 129 Cal.App.4th 36, 59-60 ["While we conclude the court erred in several respects, the leap from erroneous rulings to the appearance of bias is one we decline to make"].) In addition, allowing Morning Star to recast its claims of arbitrator error as a claim of bias would permit the evasion of the limited judicial review established by statute and agreed to as part of the parties' agreement to arbitrate. (*Moncharsh*, at p. 33; see *id.* at p. 28 [rejecting claim that arbitrator exceeded his powers under former § 1286.2, subd. (d) based on erroneous ruling because "[a] contrary holding would permit the exception to swallow the rule of limited judicial review; a litigant could always contend the arbitrator erred and thus exceeded his powers"].)

Even accepting Morning Star's argument that the cumulative effect of an arbitrator's adverse rulings may evidence bias against a party, nothing in the record would allow us to reach such a conclusion here. While Morning Star argues that any neutral observer would be shocked by various aspects of the arbitrator's rulings—most prominently, the amounts awarded—its arguments fail to explain how those rulings amounted to legal error, let alone error egregious and persistent enough to convey an impression of arbitrator partiality, when understood in their full context.

Morning Star has failed to carry its burden to establish a reasonable impression of possible bias. We therefore affirm the trial court's order declining to vacate the arbitration award on that ground. (See *FCM*, *supra*, 96 Cal.App.5th at p. 555.) In light of this conclusion, we need not address Gonzalez's argument that Morning Star forfeited its bias challenge by failing to raise it before the arbitrator. And because we affirm the judgment confirming the arbitration award, we necessarily reject Morning Star's challenge to the trial court's award of attorneys' fees and costs, as that challenge is premised solely on Morning Star's claim that the court erred in failing to vacate the arbitration award.

13

DISPOSITION

The judgment is affirmed.  Gonzalez shall recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


/s/
FEINBERG, J.

We concur:



/s/
EARL, P. J.



/s/
HULL, J.