[No. B004024. Second Dist., Div. Seven. Apr. 16, 1985.]

RAY WILSON COMPANY, Plaintiff and Appellant, v.
ANAHEIM MEMORIAL HOSPITAL ASSOCIATION,
Defendant and Respondent.

COUNSEL

Paul S. Leevan for Plaintiff and Appellant.

Munns, Kofford, Hoffman, Hunt & Throckmorton and A. Robert Throckmorton for Defendant and Respondent.

OPINION

LILLIE, P. J.—Ray Wilson Company petitioned the superior court to confirm an arbitration award (Code Civ. Proc., § 1285 et seq.) made after arbitration of a dispute between plaintiff and Anaheim Memorial Hospital Association which rose out of a written contract between the parties for new construction and remodeling of defendant's hospital by plaintiff. Defendant's response to the petition included a request that the court vacate the award. (Code Civ. Proc., § 1285.2.) ■ ■■■■ ■ Plaintiff appeals from

order denying its petition to confirm the award and granting defendant's motion to vacate the award.[1]

FACTS

The verified petition for confirmation of the award alleged: The parties' written contract was the standard form of agreement between owner and contractor issued by the American Institute of Architects. Pursuant to the arbitration provisions of the contract plaintiff filed with the American Arbitration Association (AAA) a demand for arbitration on behalf of plaintiff's mechanical subcontractor, Hickman Bros., Inc.; the nature of the dispute was described as "various items of requested change orders and RFI's which have not been approved by the architect"; the amount of the claim was not set forth. Plaintiff subsequently filed an amended demand for arbitration covering the work of additional subcontractors and asserting a total claim of $401,864. The dispute was arbitrated by a panel of three arbitrators who rendered an award of $279,508 in favor of plaintiff.

Defendant filed a response to the petition requesting that the court vacate the award on the following grounds: (1) the award was procured by corruption or undue means in that one of the arbitrators was not impartial and neutral, he failed to disclose his conflicting interests, and the selection process of the arbitrators was improper; (2) denial of defendant's request for continuance of the arbitration hearing created an undue hardship and resulted in substantial prejudice to the rights and interests of defendant; and (3) the arbitrators acted in excess of their jurisdiction by making an award in direct conflict with the unambiguous terms of the contract and by seeking to retain jurisdiction over matters not submitted to them by the parties.[2] (See Code Civ. Proc., § 1286.2.)

In opposition to the petition to confirm the award defendant submitted the declaration of its attorney, Mr. Throckmorton, stating: The AAA acknowledged plaintiff's demand for arbitration and gave each party a list of proposed arbitrators from which one was to be selected. Because of deletions by the parties or unavailability of some of the arbitrators the AAA was unable to appoint an arbitrator from that list and furnished the parties with

---

[1]An order denying a petition for confirmation of an arbitration award in effect dismisses the proceeding before the court and is equivalent to an order vacating the award. (*Robinson v. Superior Court* (1950) 35 Cal.2d 379, 382-383 [218 P.2d 10]; *Mitchum, Jones & Templeton, Inc. v. Chronis* (1977) 72 Cal.App.3d 596, 600 [140 Cal.Rptr. 160].) Such an order is appealable. (Code Civ. Proc., § 1294; *Robinson v. Superior Court, supra.*)

[2]The record indicates that the trial court's order denying the petition to confirm the award and granting the motion to vacate the award was based on all of these grounds.

a second list from which an arbitrator was selected. Thereafter, upon being notified by plaintiff that its claim would exceed $100,000, the AAA determined that the matter required a panel of three arbitrators and accordingly submitted to the parties a third list from which to select two additional arbitrators. The AAA fixed January 26, 1981 as the date for commencement of the hearing and indicated that in addition to Irwin Fulop, the first arbitrator selected, John Helm and Stephen Collins would serve on the panel. Subsequently, by letter dated January 22, 1981, the AAA informed the parties that Helm had withdrawn and that it had declared his office vacant and had named Tod Stice to fill that position; the AAA further indicated that Stice had accepted the appointment. The letter did not reach defendant's counsel prior to January 26, 1981 and they did not learn until then of the change in the panel of arbitrators. Prior to the commencement of arbitration, Throckmorton objected to Stice's appointment and was told by Jacquelyn Downs, deputy director of the AAA, that Stice had been selected by the AAA because he was actively engaged in the mechanical/plumbing contracting business and that the arbitration would proceed with him as one of the arbitrators. Throckmorton again objected and requested a continuance to permit the selection of a third arbitrator from lists submitted to the parties by the AAA. The request was denied but Throckmorton was given permission to examine Stice for cause. Throckmorton told Stice that the arbitration involved the establishment of rates for extra work performed by plumbers and that Hickman, in proposing its rates for extra work, was attempting to establish a standard for the industry which could be beneficial to Stice in his business. Stice responded by stating that he did not believe such factor would cause him to be biased or prejudiced. When asked by Throckmorton if he had a personal relationship with any of the principals of Hickman, Stice said that he had a longstanding acquaintance with Claude Hickman, father of the company's current president, and had been involved with Mr. Hickman in activities of the employer's council for the mechanical contracting industry. After concluding his questioning of Stice, Throckmorton renewed his objection to Stice's serving as an arbitrator because of his acquaintance with the Hickman family and his interest in establishing an industry standard for greater compensation for extra work. Fulop and Collins, the other two members of the panel of arbitrators, overruled Throckmorton's objection stating that they did not feel Stice would be biased or prejudiced. The arbitration hearing then commenced, and proceeded to its conclusion, with Stice serving on the panel of arbitrators.

Plaintiff submitted the declaration of its attorney stating: On January 28, 1981, Throckmorton on defendant's behalf signed a stipulation to pay the arbitrators for their services; thereafter an additional 16 days of hearings, over a space of 7 months, took place before the arbitrators; during that

period both parties submitted evidence to support their respective claims and Throckmorton at no time voiced an objection to the panel of arbitrators. Plaintiff submitted a declaration of each of the arbitrators (Fulop, Collins and Stice) containing similar statements. Plaintiff also submitted a declaration of Ken Robinson, the AAA administrator assigned to the matter. In his declaration Mr. Robinson stated that no objection to Stice's serving as an arbitrator ever was made to him either orally or in writing.

DISCUSSION

I

PROPRIETY OF STICE'S APPOINTMENT
AND SERVICE AS AN ARBITRATOR

In *Commonwealth Corp.* v. *Continental Co.* (1968) 393 U.S. 145 [21 L.Ed.2d 301, 89 S.Ct. 337] the United States Supreme Court, interpreting the federal statutory grounds for vacating an arbitration award, announced the rule that arbitrators must "disclose to the parties any dealings that might create an impression of possible bias" (393 U.S. at p. 149 [21 L.Ed.2d at p. 305]) and held that failure to make such a disclosure constitutes cause for vacating the award. Statutory grounds for vacation of an award in California (Code Civ. Proc., § 1286.2, subds. (a) and (b))[3] are practically identical with the comparable federal grounds, and the "impression of possible bias" rule has been held applicable in this jurisdiction. (*Johnston* v. *Security Ins. Co.* (1970) 6 Cal.App.3d 839, 841-842 [86 Cal.Rptr. 133].)

Prior to commencement of arbitration Stice disclosed his relationship with plaintiff's subcontractor Hickman. After the relationship was revealed, defendant objected to Stice as an arbitrator on two grounds: he had a personal relationship with the Hickman family; his business would benefit in the event that Hickman was successful in establishing an industry standard for compensation for extra work. ■ A personal relationship (acquaintance) between an arbitrator and a party to the arbitration does not require vacation of an award for possible bias. (See *Gonzales* v. *Interinsurance Exchange* (1978) 84 Cal.App.3d 58, 64-65 [148 Cal.Rptr. 282].) Because arbitrators are selected for their familiarity with the type of business dispute involved, they are not expected to be entirely without business con-

---

[3]Code of Civil Procedure section 1286.2 provides in pertinent part: ". . . the court shall vacate the award if the court determines that: [¶] (a) The award was procured by corruption, fraud or other undue means; [¶] (b) There was corruption in any of the arbitrators; . . . ."

tacts in the particular field. (*Figi* v. *New Hampshire Ins. Co.* (1980) 108 Cal.App.3d 772, 776 [166 Cal.Rptr. 774].) The fact that an arbitrator and a party to the arbitration are members of the same professional organization "is in itself hardly a credible basis for inferring even an impression of bias." (*San Luis Obispo Bay Properties, Inc.* v. *Pacific Gas & Elec. Co.* (1972) 28 Cal.App.3d 556, 567 [104 Cal.Rptr. 733].) ▌ We have only defendant's self-serving statement that Hickman sought to establish industrywide standards for compensation in the mechanical contracting field; nothing in the record substantiates this claim. In any event, a "benefit" accruing to Stice from the establishment of such a standard appears remote indeed, and is not sufficient to establish possible bias as a matter of law.

▌ Defendant contends that the award nevertheless was properly vacated because the appointment of Stice as a replacement arbitrator, and his service on the panel over defendant's objections, violated the following construction industry arbitration rules of the AAA which the contract of the parties makes applicable to disputes rising out of the contract:

"Section 19. DISCLOSURE AND CHALLENGE PROCEDURE—A person appointed as neutral arbitrator shall disclose to the AAA any circumstances likely to affect his or her impartiality, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their counsel. Upon receipt of such information from such arbitrator or other source, the AAA shall communicate such information to the parties, and, if it deems it appropriate to do so, to the arbitrator and others. Thereafter, the AAA shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive."

"Section 20. VACANCIES—If any arbitrator should resign, die, withdraw, refuse, be disqualified or be unable to perform the duties of office, the AAA shall, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with the applicable provisions of these Rules. In the event of a vacancy in a panel of neutral arbitrators, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise."

Defendant argues that, contrary to the provisions of section 19, Stice failed to disclose to the AAA circumstances likely to affect his impartiality until the date scheduled for commencement of the hearing and did so then only upon questioning by attorney Throckmorton; also, under section 19 the AAA, not the arbitrators, must determine whether an arbitrator should be disqualified for bias. Defendant further argues that upon Helm's with-

drawal from the panel of three arbitrators, rule 20 limited the power of the two remaining arbitrators to proceeding with the hearing and determining the controversy; they were without authority to pass upon the qualifications of Stice to serve as the third arbitrator.

Assuming arguendo that Stice's selection and service as an arbitrator was contrary to the provisions of sections 19 and 20, such is not a ground for vacating the arbitration award. Section 38 of the governing arbitration rules provides: "WAIVER OF RULES—Any party who proceeds with the arbitration after knowledge that any provision or requirement of these Rules has not been complied with and who fails to state an objection thereto in writing, shall be deemed to have waived the right to object."[4] The evidence shows that although attorney Throckmorton objected to Stice's serving as an arbitrator before commencement of arbitration, he did not do so on the ground that Stice was appointed in disregard of the arbitration rules; after Throckmorton's objections were overruled, he stipulated to payment of arbitrators' fees and participated in the arbitration hearings without again objecting on any ground, either orally or in writing, to Stice's presence on the panel. Under section 38 of the arbitration rules, defendant therefore is deemed to have waived its objection that Stice was neither appointed nor qualified to serve in accord with those rules. Such asserted impropriety is not a valid basis for the order refusing to confirm the arbitration award and granting the motion to vacate the award.

■ According to Throckmorton's declaration he "requested a continuance of the matter to permit the selection of the third arbitrator through the selection process which had been done on three prior occasions in this matter, the first time when two lists were submitted to obtain one arbitrator, the second time when one list was submitted." Defendant argues that the continuance was improperly denied because section 13 of the arbitration rules[5] required selection of the third arbitrator in the manner proposed by

---

[4]Rule 38 is in accord with the principle that a party may not urge error in a ruling or procedure to which he impliedly agreed by his failure to make proper objection, by his conduct, or otherwise. (See *Redevelopment Agency* v. *City of Berkeley* (1978) 80 Cal.App.3d 158, 166 [143 Cal.Rptr. 633]; *Cushman* v. *Cushman* (1960) 178 Cal.App.2d 492, 498 [3 Cal.Rptr. 24].)

[5]Section 13 reads: "APPOINTMENT FROM PANEL—If the parties have not appointed an arbitrator and have not provided any other method of appointment, the arbitrator shall be appointed in the following manner: Immediately after the filing of the Demand or Submission, the AAA shall submit simultaneously to each party to the dispute an identical list of names of persons chosen from the Panel. Each party to the dispute shall have seven days from the mailing date in which to cross off any names to which it objects, number the remaining names to indicate the order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable. From among the persons who have been approved on both lists, and in

Throckmorton. Defendant participated in the arbitration proceeding after the AAA denied its request for continuance made on the ground that the provisions of section 13 were ignored in selecting Stice as the third arbitrator. Accordingly, under section 38 of the arbitration rules defendant is deemed to have waived that objection and to have withdrawn its request for continuance.

## II

### Contention That Award Exceeds Jurisdiction of Arbitrators

 Defendant argues that the arbitrators acted in excess of their jurisdiction by making an award which disregarded the following provisions of the parties' contract: if the contractor wishes to make a claim for an increase in the contract sum, he must give the architect written notice thereof within 20 days after the occurrence of the event giving rise to the claim; as a condition precedent to arbitration, the architect must render a written decision on the claim; all temporary utilities necessary to keep the hospital functioning are to be provided by the contractor at no additional cost to the hospital.

 Under certain circumstances an award based on an error in law may be set aside on the ground that it was in excess of the arbitrator's powers. (Code Civ. Proc., § 1286.2, subd. (d); *Abbott* v. *California State Auto. Assn.* (1977) 68 Cal.App.3d 763, 770 [137 Cal.Rptr. 580].) A trial court, however, is limited in its authority to vacate the award of an arbitrator, even in the event of an error of fact or law. The mere fact that an arbitrator reached an erroneous conclusion based on an error of law which does not appear on the face of the record will not invalidate the award; on the other hand, where the error appears on the face of the award and causes substantial injustice the award may be vacated. (*Hirsch* v. *Ensign* (1981) 122 Cal.App.3d 521, 529 [176 Cal.Rptr. 17]; *Abbott* v. *California State Auto. Assn., supra,* 68 Cal.App.3d at p. 771.) The asserted error of the arbitrators in making the award in disregard of certain provisions of the contract does not appear on the face of the award which consists of 79 items

---

accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree upon any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to make the appointment from other members of the Panel without the submission of any additional lists."

none of which indicates what it encompasses.[6] The declarations of the arbitrators state that the arbitration hearings consisted of evidence presented by both parties including testimony, the parties' contract, general conditions, plans, specifications, shop drawings, and voluminous correspondence between plaintiff and the architect pertaining to claims for extras; *during the course of the arbitration proceedings the parties agreed that the architect did not make a final decision on certain items claimed by plaintiff and that if such items were not decided by the parties they would be discussed and presented at a later hearing.*

█ The merits of the controversy are for the arbitrator, not for the courts; it is not appropriate for a court to review the sufficiency of the evidence before the arbitrator or to pass upon the validity of the arbitrator's reasoning. (*Rodrigues* v. *Keller* (1980) 113 Cal.App.3d 838, 843 [170 Cal.Rptr. 349].) "Our review of the arbitrators' decision is very narrow. 'Whether they were right or wrong, the arbitrators decided the issue that was properly before them, and the decision arrived at was one that the parties by their contract agreed should be conclusive. If there is an error in law it is not reviewable by the courts unless we are able to say that the arbitrators gave a completely irrational construction to the provision in dispute. . . .' [Citations.]" (*Manatt, Phelps, Rothenberg & Tunney* v. *Lawrence* (1984) 151 Cal.App.3d 1165, 1171 [199 Cal.Rptr. 246].)

█ On this record it cannot be said that the arbitrators, in making their award, either ignored the contractual provisions in question or gave to such provisions a completely irrational construction. Accordingly, the trial court erred in vacating the award on the ground that it is in excess of the arbitrators' jurisdiction because it was made in disregard of certain provisions of the parties' contract.

█ The award concludes by stating: "The arbitrators retain jurisdiction to hear and determine further disputes between the parties in the above-captioned matter." While plaintiff requested such retention of jurisdiction defendant did not agree to it. An arbitrator derives his power solely from

---

[6]The award provides in part: "The undersigned arbitrators award as follows:

"1. *Clarification No. 1*

"To Claimant for the benefit of Hickman Bros. Inc. (hereinafter called 'Hickman')
$1,642.00
"To Claimant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 190.00
TOTAL $1,832.00"

Subsequent items of the award are designated "Field Order" or "Quote," each followed by a number. However, none contains more detailed information than that set forth in the above example.

the arbitration agreement and has no power to decide issues not submitted. (*Delta Lines, Inc.* v. *International Brotherhood of Teamsters* (1977) 66 Cal.App.3d 960, 966 [136 Cal.Rptr. 345]; *Stove Mounters' Internat. Union* v. *Rheem Manufacturing Co.* (1959) 168 Cal.App.2d 690, 695 [336 P.2d 181].) In the trial court plaintiff agreed to modification of the award to delete therefrom the provision wherein the arbitrators retained jurisdiction to hear and determine further disputes between the parties. The award may be so corrected "without affecting the merits of the decision upon the controversy submitted." (Code Civ. Proc., § 1286.2, subd. (d).)

## DISPOSITION

The order is reversed with directions to the trial court to correct the award by deleting therefrom the sentence "The arbitrators retain jurisdiction to hear and determine further disputes between the parties in the above-captioned matter," and to enter judgment confirming the award as so corrected.

Thompson, J., and Johnson, J., concurred.