[No. A101839. First Dist., Div. Two. May 27, 2004.]

INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS OF THE UNITED STATES AND CANADA, LOCAL No. 16, Plaintiff and Respondent, v. CHARLOTTE LAUGHON, Defendant and Appellant.

## COUNSEL

Daniel Mark Siegel for Defendant and Appellant.

Weinberg, Roger & Rosenfeld, W. Daniel Boone, M. Suzanne Murphy and Ellyn Moscowitz for Plaintiff and Respondent.

## OPINION

**HAERLE, Acting P. J.—**

## I. INTRODUCTION

Defendant and appellant Charlotte Laughon appeals from a trial court order confirming an arbitration award in favor of plaintiff and respondent International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, Local Union No. 16 (Local 16). Laughon argues that the trial court was required to vacate the arbitration award because the arbitrator failed to disclose (1) prior service as a neutral arbitrator in collective bargaining cases in which attorneys for Local 16 represented a party and (2) prior service as a neutral arbitrator in a non-collective-bargaining case in which attorneys for Local 16 represented a party. We conclude that, pursuant to Code of Civil Procedure, section 1281.9, subdivision (a)(4),[1] the arbitrator was required to disclose his service as a neutral arbitrator in the non-collective-bargaining matter. We also conclude

---

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise noted.

this claim was not waived and, therefore, the arbitrator's nondisclosure of this required matter was grounds for vacation under section 1286.2, subdivision (a)(6)(A). For the parties' guidance on remand, we find that the arbitrator was not required to disclose his service in collective bargaining arbitrations. We reverse the judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Several years before the arbitration that is the subject of this appeal took place, Laughon sued Local 16 for sex discrimination. On February 28, 2000, she and Local 16 entered into a settlement agreement. They agreed that any dispute about the terms of the settlement agreement would be submitted to binding arbitration by one of four named arbitrators. Among them was arbitrator John Kagel.

A dispute arose and, in early 2001, Laughon agreed to submit it to arbitration before Kagel. Kagel was informed of his selection as arbitrator on April 23, 2001.

The arbitration began on November 5, 2001, and, after a continuance, was concluded on November 13, 2001. At no time before the arbitration hearing did Kagel disclose any contact with the Van Bourg firm, which represented Local 16. Kagel had, in fact, recently served as the neutral arbitrator in a non-collective-bargaining arbitration between an individual named Hydorn and Stationary Engineers Local 39. The Van Bourg firm represented Local 39 in that arbitration. In addition, Kagel served as the neutral arbitrator in numerous collective bargaining cases in which the Van Bourg law firm served as counsel.

Kagel's service as neutral arbitrator in the Hydorn matter came to light near the end of the first day of the arbitration hearing between Laughon and Local 16, on November 5, 2001, when Local 16 introduced as an exhibit Kagel's June 13, 2001, decision in the Hydorn case. After this exhibit was introduced, Kagel did not acknowledge he had failed to disclose his service as an arbitrator in the Hydorn matter nor did he alert Laughon's counsel that his service as an arbitrator might be grounds for disqualification in the Laughon arbitration. Rather, he stated, as an aside, that he thought the opinion he had rendered in that matter "has now been blessed by the court." He marked the opinion as an exhibit for identification and the parties moved on to other matters.[2]

---

[2] The entire discussion was as follows:

"MR. BOONE [Local 16's counsel]: Mr. Kagel, while I think about it, in support of argument at some point, I'm going to provide, and I want to give counsel a copy of an opinion

Kagel issued an award, largely in favor of Local 16, on March 29, 2002. On June 27, 2002, Laughon filed a petition to vacate the award on the ground that Kagel had failed to disclose certain matters that might serve as a basis for his disqualification, including his prior employment as an arbitrator in cases involving Local 16, or its counsel, the Van Bourg law firm.

After hearing the matter in November 2002, the trial court filed a statement of decision on January 16, 2003. The trial court made a number of factual findings. First, the court found that Kagel did not disclose his contacts with the Van Bourg firm nor did he disclose "a business contact" (presumably, his service as neutral arbitrator) "in a case involving an individual named Hydorn and Stationary Engineers Local 39." The trial court found that, after the Hydorn case was "mentioned" during the Laughon arbitration, no objection was made to Kagel hearing the rest of Laughon's case or failing to disclose the Hydorn case after the exhibit containing Kagel's opinion in the Hydorn matter came to light.

The trial court also found, based on information submitted by the Van Bourg firm regarding the results of collective bargaining arbitrations conducted by Kagel, that "there is no bias in favor of [the Van Bourg] firm apparent from . . . the results of such arbitration hearings." Based on its examination of the transcripts of the Laughon arbitration, the trial court found that there was no "obvious bias or prejudice in the manner in which Kagel conducted the hearings."

The trial court also reached a number of legal conclusions based on these factual findings. First, the trial court found that Kagel had failed to disclose his involvement as the neutral arbitrator in the Hydorn case, as mandated by section 1281.9, subdivision (a)(4). The court found, however, that "[o]nce the information regarding the Hydorn case became known, there appears to have been a conscious decision not to raise the issue of disclosure and any disqualification as a tactical decision. There was ample opportunity to discuss the issue and, although much of the testimony had been taken, the hearing could have been rescheduled, particularly since Mr. Siegel [counsel for Laughon] had further testimony to present and requested a continued hearing date anyway. Under the circumstances, this constituted a knowing, voluntary and intelligent waiver."

---

on a decision that you issued in the matter of Hydorn versus Local 39, in terms of—in support of claims on behalf of breaches of confidentiality agreements or follow-up of settlement agreements. Just so it doesn't come out for the first time in a brief.

"ARBITRATOR KAGEL: I understand that it has now been blessed by the court. [¶] We will mark it as a Union exhibit for identification, for persuasive purposes, I take it.

"MR. BOONE: Number 24, for identification. It is just a matter of support.

"(Union Exhibit No. 24 marked for identification.)

"ARBITRATOR KAGEL: Well, you haven't rested yet, so you get to keep doing whatever you are doing."

The court also held that "[e]ven if the facts and circumstances are insufficient to constitute a waiver, the totality of the information which could have been disclosed, whether or not the collective bargaining agreement arbitrations are included does not reveal any disqualifying bias or prejudice. From the history of results of other arbitrations, there was reason to believe that if there was any bias, it would be against Mr. Boone and his law firm, not against Laughon. A reading of the transcript of the arbitration does not support the charges by Laughon that the arbitrator was rude to her but friendly to Local 16."

The trial court confirmed the arbitration award and this timely appeal followed.

## III. DISCUSSION

A. *Failure to Disclose Service in Hydorn Arbitration*

Local 16 does not dispute that Kagel served as neutral arbitrator in a non-collective-bargaining case between an individual named Hydorn and the International Union of Operating Engineers, Stationery Engineers Local 39 (Local 39) and that he did not disclose this service.

Kagel's disclosure obligations are set out in section 1281.9. Section 1281.9, subdivision (a)(4), specifies that an arbitrator must disclose "[t]he names of the parties to all prior or pending noncollective bargaining cases involving any party to the arbitration or lawyer for a party for which the proposed neutral arbitrator served or is serving as neutral arbitrator . . . ." Section 1281.9, subdivision (b), provides that a "proposed neutral arbitrator shall disclose all matters required to be disclosed pursuant to this section to all parties in writing within 10 calendar days of service of notice of the proposed nomination or appointment."[3] Thus, ten days after he was proposed as the neutral arbitrator in the Laughon matter, Kagel was required to disclose his service as neutral arbitrator in the Hydorn matter. Had Kagel done so, Laughon would have been entitled to disqualify him within 15 days after the disclosure statement was served. (§ 1281.91, subd. (b)(1).) Kagel did not make this required disclosure and Laughon, understandably enough, did not move to disqualify him.

[3] At the time Kagel was required to make this disclosure, in 2001, the applicable section governing his disclosure obligations was section 1281.9, subdivision (a)(2). When section 1281.9 was amended, effective in 2002, section 1281.9, subdivision (a)(2) was renumbered as section 1281.9, subdivision (a)(4). The trial court and the parties refer to the current version of the statute. We shall do so here as well.

■ A party who does not move to disqualify an arbitrator prior to the commencement of arbitration may nevertheless seek vacation of an arbitration award on the ground that the arbitrator "failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware." (§ 1286.2, subd. (a)(6)(A).) This statute provides that, when such a failure occurs, "the court *shall* vacate the award." (§ 1286.2, italics added.) The explicit language of the statute, therefore, supports Laughon's argument that the trial court was required to vacate the arbitration award once it was shown that Kagel failed to make the required disclosure in a timely fashion.

For the first time in its petition for rehearing, Local 16 argues that a section of the 2001 statute amending section 1286.2 suggests that section 1286.2, subdivision (a)(6)(A), does not require an arbitration award to be vacated *solely* on the ground of a failure to disclose; there must be more, it argues, i.e., the undisclosed matter must be such that might cause a reasonable person to question the arbitrator's impartiality. The language Local 16 relies upon reads: "It is the intent of the Legislature that the grounds for vacatur added by subparagraph (A) paragraph (6) of subdivision (a) of section 1286.2, is declarative of existing case law which provides that an arbitration award may be vacated when a neutral arbitrator fails to disclose a matter that might cause a reasonable person to question the ability of the arbitrator to conduct the arbitration proceeding impartially." (Stats. 2001, ch. 362, § 8.) Citing cases predating section 1286.2, subdivision (a)(6)(A), principally *Commonwealth Coatings Corp. v. Continental Casualty Co.* (1968) 393 U.S. 145 [21 L.Ed.2d 301, 89 S.Ct. 337] (*Commonwealth*) and *Michael v. Aetna Life & Casualty Ins. Co.* (2001) 88 Cal.App.4th 925 [106 Cal.Rptr.2d 240] (*Michael*), Local 16 argues that this expression of legislative intent undermines our conclusion that Kagel's failure to disclose the Hydorn matter, as required under section 1281.9, subdivision (a)(4), requires vacatur of the arbitration award under section 1286.2, subdivision (a)(6)(A).

This argument, besides being untimely, is also incorrect. Section 1286.2, as amended in 2001, mandates that a court "shall" vacate an arbitration award if, among other reasons, the arbitrator making the award "failed to disclose . . . a ground for disqualification of which the arbitrator was then aware." (§ 1286.2, subd. (a)(6)(A).) Those grounds include, of course, those enumerated in the six subparagraphs of section 1281.9, subdivision (a). Those subparagraphs are preceded by the following general description of the matters which must be disclosed (a description also added in 2001): "[A]ll matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial, *including all of the following.*" (§ 1281.9, subd. (a), italics added.) This language makes clear that, when it amended both sections 1281.9 and 1286.2, subdivision (a)(6)(A) in 2001, the Legislature intended that the failure to

disclose the sort of prior relationship involved here necessarily satisfies the "might cause a reasonable person to question" standard mentioned in section 8 of the 2001 statute. Put another way, because section 1281.9, subdivision (a)'s general description of the matters which must be disclosed was both enacted contemporaneously with section 1286.2, subdivision (a)(6)(A), and worded substantially the same as the statutory explanation of the latter, it is obvious that the Legislature did not intend the two sections to conflict in any way.

## B. *Waiver*

Local 16, however, contends that, although Kagel failed to make the disclosure required by statute, Laughon waived any challenge to Kagel's service as neutral arbitrator. Local 16 bases this argument on, first of all, the fact that Laughon made no objection to Kagel's service on the first day of the arbitration hearing when Kagel's opinion in the Hydorn matter was marked for identification purposes and a copy provided to her counsel. In effect, Local 16 contends that Kagel's service as arbitrator in the Hydorn matter was disclosed when the Van Bourg firm offered for identification a copy of Kagel's award in that arbitration and that Laughon's inaction after the award was introduced amounted to a waiver. Second, relying on section 1281.91, subdivision (c), Local 16 contends that Laughon should have moved to disqualify Kagel under section 1281.91, subdivision (a), and, because she failed to do so, she has waived any right to object to Kagel's service as an arbitrator of her case. We do not agree with either of these arguments.

■ We will review the trial court's holding that Laughon waived any objection to Kagel's service as a neutral arbitrator de novo, because that conclusion is one based on undisputed facts. Those undisputed facts are that (1) the opinion in the Hydorn case was introduced into evidence on the first day of the hearing, (2) the arbitrator mentioned that the opinion had been confirmed by the trial court, then turned to other matters, and (3) Laughon's counsel did not raise any objection to Kagel's failure to disclose his involvement in the Hydorn case. In such a circumstance, " 'the issue [of waiver] is one of law and the reviewing court is not bound by the trial court's ruling.' " (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 [8 Cal.Rptr.3d 517, 82 P.3d 727], quoting *Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 319 [24 Cal.Rptr.2d 597, 862 P.2d 158].) Additionally, in this case the waiver issue involves the interpretation and application of the only waiver provision in the three relevant statutes (§§ 1281.9, 1281.91 and 1286.2), namely section 1281.91, subdivision (c). It is axiomatic that the interpretation and application of statutes is a matter of independent review. (See, e.g., *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956], and cases cited therein.)

Of particular relevance to the question of whether the introduction of the Hydorn opinion amounted to a disclosure and, thus, counsel's failure to object amounted to a waiver, is *Kaiser Foundation Hospitals, Inc. v. Superior Court* (1993) 19 Cal.App.4th 513, 517 [23 Cal.Rptr.2d 431] (*Kaiser*). In *Kaiser*, the neutral arbitrator failed to disclose his service as a Kaiser party arbitrator on behalf of one of the parties to the arbitration. Two years after the neutral arbitrator was appointed, and apparently before the arbitration concluded, counsel for Kaiser wrote a letter to opposing counsel in which he stated that the neutral arbitrator had served as a party arbitrator on behalf of his client. (*Id.* at p. 516.) Although the trial court suggested "it was possible one party might make the adequate advisements an arbitrator himself should make" (*ibid.*), it determined that counsel's disclosure was inadequate and vacated the arbitration award. The Court of Appeal affirmed, stating, "Of course, as the trial court recognized, the consequences of such a failure [to disclose] may be overcome if the pertinent facts are actually revealed, or otherwise become known, to the parties in some other fashion. We agree, however, with the court that the terse, and essentially misleading, phraseology of counsel's letter of acceptance did not adequately fulfill that obligation here." (*Id.* at p. 517.)

In *Kaiser*, information about a neutral arbitrator's past contacts with a party was disclosed far more explicitly than Kagel's prior service was disclosed during the Laughon arbitration. Laughon's counsel was presented with an exhibit that purportedly did nothing more than support opposing counsel's legal position. Although a close scrutiny of the document would have revealed that Kagel had served as the arbitrator in this matter in which the Van Bourg firm represented a party, there was no discussion of the possible conflict. Clearly, neither Kagel nor Local 16 called it to Laughon's counsel's attention, nor was that counsel given an opportunity (an opportunity which, in any event, would obviously be untimely under section 1281.9) to object to Kagel's continuing service as an arbitrator. In fact, when asked about the document during his deposition, Laughon's counsel stated that, although he recalled seeing the document during the arbitration he could only "guess" that he recalled it was an arbitration award rendered by Kagel. When asked if he noticed that an attorney for the Van Bourg firm had appeared in that matter, he replied, "You know, I don't recall that this got a whole lot of attention from me during the arbitration because I didn't think it was very important. [¶] But I do recall that it was introduced."[4]

---

[4] We note that, in the section reserved for its legal conclusions, the court wrote "[o]nce the information regarding the Hydorn case became known, there appears to have been a conscious decision not to raise the issue of disclosure and any disqualification as a tactical decision. There was ample opportunity to discuss the issue and, although much of the testimony had been taken, the hearing could have been rescheduled, particularly since Mr. Siegel [counsel for Laughon] had further testimony to present and requested a continued hearing date anyway.

A case cited by Local 16 in support of its waiver argument is also instructive, although ultimately not helpful to it. In *Health Services Management Corp. v. Hughes* (7th Cir. 1992) 975 F.2d 1253, the American Arbitration Association (AAA) failed to disclose as required that several proposed arbitrators had previous business relationships with a party to the arbitration. On the first day of arbitration, counsel for one of the parties asked whether any of the arbitrators had any conflicts of interest, and the arbitrators disclosed these prior relationships. Counsel indicated he had not received this disclosure directly from the AAA, as required. However, after the disclosure was made, the arbitrator "announced that if either party wanted to place any objections on the record, they should do it at that time." (*Id.* at p. 1255.) Counsel did not do so. After the arbitration award was issued, Health Services Management sought to have it set aside on the ground that the conflict disclosure had not been made by the AAA, pursuant to its own rules.

The court rejected this argument. It found that Health Services Management had "learned about the previous business relationships between Hughes and [the] arbitrators . . . at the January 16th hearing and had an opportunity to object . . . ." The court noted that, had this not occurred, "AAA's failure to disclose the existence of the prior relationship would clearly be the basis upon which to vacate the arbitration decision." (*Health Services Management Corp. v. Hughes, supra,* 975 F.2d at p. 1260.) The *Health Services Management* court held that the parties' objection to the arbitrator's required disclosure was waived, because the disqualifying information had been directly disclosed to the parties and, following this disclosure, the parties were given an opportunity to object to the arbitrator's service.

Similarly, in *HSMV Corp. v. ADI Limited* (C.D. Cal. 1999) 72 F.Supp.2d 1122, 1131, the court found that, although a "careful study" of certain documents might have revealed a disclosable conflict, this alone was "not sufficient to support a finding that HSMV waived the [arbitrator's] conflict of interest." The court specifically held that, " '[c]learly, as a threshold matter one must know of, understand and acknowledge the presence of a conflict of interest before one can' waive the conflict." In that case, as in this one, no waiver can be found when "[t]he record simply does not demonstrate that

---

Under the circumstances, this constituted a knowing, voluntary and intelligent waiver." The trial court did not, however, make any factual finding to this effect in the section devoted to its findings of fact. Nevertheless, to the extent that this discussion of the court's legal conclusions suggests that, as a matter of fact, Siegel was aware of and made a conscious decision not to raise the issue of Kagel's failure to disclose the Hydorn matter, this conclusion would be purely speculative and unsupported by substantial evidence. The evidence available to the trial court indicates that, at most, Siegel "glanced" at the opinion, "guessed" he noticed that Kagel was the arbitrator and didn't give the question of whether Van Bourg was involved "a whole lot of attention." This is not surprising, given that no one at the hearing explicitly mentioned Kagel's disclosure obligation when the opinion was offered for identification purposes. As we discuss at greater length below, more than this is required to effect a disclosure.

[the party] actually knew, understood and acknowledged the presence of a conflict before the conclusion of the arbitration proceedings." (*Ibid.*)

Sound policy reasons support our conclusion that the events here constitute neither a disclosure nor a waiver of an arbitrator's conflict. The United States Supreme Court found in *Commonwealth, supra,* 393 U.S. at page 147, that the failure to make a required disclosure is grounds for vacating an arbitration award even if there is no proof of actual bias. The court noted that, "[W]e should, if anything be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review. We can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias." (*Id.* at p. 149.)

Our Legislature has crafted disclosure rules designed to protect the integrity of the arbitration process, including the specific disclosure requirements set out in section 1281.9. The requirement that arbitrators make timely disclosures of potential conflicts is a particularly important safeguard. We cannot agree that this important disclosure requirement may be fulfilled in the manner Local 16 contends. At the very least, Laughon was entitled to the functional equivalent of the disclosure mandated by statute, i.e., an explicit, formal proffer of the disqualifying information (§ 1281.9) and an opportunity to object (§ 1281.91).[5]

 We conclude, therefore, that because no effective disclosure of the disqualifying information took place, the trial court erred in finding that Laughon "knowingly" waived her objection to Kagel's failure to disclose his prior service as a neutral arbitrator in the Hydorn matter when she did not object after the opinion in that case was offered into evidence during the arbitration.

The cases cited by Local 16 in support of its argument to the contrary do not compel a different result. In *Cobler v. Stanley, Barber, Southard, Brown & Associates* (1990) 217 Cal.App.3d 518 [265 Cal.Rptr. 868] (*Cobler*), Stanley, Barber argued that the arbitrator failed to disclose certain matters which might

---

[5] The importance of such a disclosure obligation is underlined in the *Kaiser* case. There the appellate court quoted approvingly this statement by the trial court: " 'What this [vacating the arbitration award] does counsel, is it will make sure every single lawyer for Kaiser, if they have even a scintilla of knowledge that the neutral arbitrator has had contact with Kaiser, that they will insist that the neutral arbitrator perform the neutral arbitrator's duty and disclose it. That is what will happen, I hope. That is what should happen.' " (*Kaiser, supra,* 19 Cal.App.4th at p. 517.) If this was the case when *Kaiser* was decided in 1993, it is even more so since the enactment of section 1281.9 the following year and section 1281.91 in 2001.

create an impression of possible bias and which, under the AAA arbitration rules, should have been disclosed. The trial court, however, held that the arbitrator was not biased and, further, that any claim of apparent bias was waived because Stanley Barber was well aware of the purported grounds for apparent bias due to its counsel's knowledge of the arbitrator's activities that gave rise to the bias claim. Here, in contrast, it is not at all clear, as it was in *Cobler*, that Laughon was aware of the grounds for Kagel's required disclosure. Moreover, the disclosure obligations and waiver rules in *Cobler* were promulgated by the AAA. *Cobler* does not, therefore, discuss the disclosure rules set out in section 1281.9.

*Ray Wilson Co. v. Anaheim Memorial Hospital Assn.* (1985) 166 Cal.App.3d 1081, 1089–1090 [213 Cal.Rptr. 62] (*Ray Wilson*), disapproved on other grounds in *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 27–28 [10 Cal.Rptr.2d 183, 832 P.2d 899], is also distinguishable. In that case, the disqualifying information was, in fact, disclosed. The issue in *Ray Wilson* was not whether there was a proper disclosure, but whether the arbitrator's failure to disclose this information directly to AAA under its rules mandated vacation of the award. The court concluded that *this* claim was waived, because AAA rules specify that a party who proceeds with an arbitration with knowledge of any violation of AAA rules will be deemed to waive that objection. (*Id.* at p. 1089.) *Ray Wilson*, like *Cobler*, is distinguishable because it construes an arbitrator's disclosure obligations under the AAA rules, rather than under section 1281.9.

Finally, in *Britz, Inc. v. Alfa-Laval Food & Dairy Co.* (1995) 34 Cal.App.4th 1085 [40 Cal.Rptr.2d 700], the court found that substantial evidence supported the trial court's conclusion that one of the appellants had timely knowledge of the receipt of certain business referrals that were not disclosed by the arbitrator. Here, however, the facts support no such conclusion.

Citing section 1281.91, subdivision (c), Local 16 also contends that, because Laughon did not move to disqualify Kagel under section 1281.91, subdivision (a), she has waived any right to object to Kagel's service as an arbitrator of her case. Section 1281.91, subdivision (a) provides that "[a] proposed neutral arbitrator shall be disqualified if he or she fails to comply with Section 1281.9 and any party entitled to receive the disclosure serves a notice of disqualification within 15 calendar days after the proposed nominee or appointee fails to comply with Section 1281.9." Section 1281.91, subdivision (c) provides in pertinent part that "[t]he right of a party to disqualify a proposed neutral arbitrator pursuant to this section shall be waived if the party fails to serve the notice pursuant to the times set forth in this section, unless the proposed nominee or appointee makes a material omission or material misrepresentation in his or her disclosure."

These provisions do not mandate waiver in this case for three reasons. First of all, although the language of section 1281.91, subdivision (a), does not make this clear by its express terms, it obviously applies only when (1) an arbitrator fails to make a disclosure required under section 1281.9 and (2) within 15 calendar days of the date the disclosure should have been made, the party entitled to the disclosure is or becomes aware of facts which should have been disclosed. Such was clearly not the case here. Second, section 1281.91, subdivision (c), as previously noted the only provision in any of the relevant sections pertinent to waiver, manifestly applies only when the proposed arbitrator has made the requisite disclosure. This is made clear by the exception to the waiver rule posited in the last clause of the first sentence of the subdivision: ". . . . unless the proposed nominee or appointee makes a material omission or material misrepresentation *in his or her disclosure.*" (§ 1281.91, subd. (c), italics added.)

Third and finally, and as noted earlier, section 1281.91, subdivision (c), makes clear that "[n]othing in this subdivision shall limit the right of a party to vacate an award pursuant to Section 1286.2 . . . ." Thus, although Laughon could not have been expected to object to Kagel under section 1281.91, subdivision (a), she is not precluded from doing so pursuant to section 1286.2.

## C. *Bias*

The trial court also concluded that, "[e]ven if the facts and circumstances are insufficient to constitute a waiver, the totality of the information which could have been disclosed, whether or not the collective bargaining agreement arbitrations are included does not reveal any disqualifying bias or prejudice. From the history of results of other arbitrations, there was reason to believe that if there was any bias, it would be against Mr. Boone and his law firm, not against Laughon. A reading of the transcript of the arbitration does not support the charges by Laughon that the arbitrator was rude to her but friendly to Local 16." Local 16 contends that the arbitration award must be confirmed because Kagel's failure to disclose his service as arbitrator of the Hydorn matter was not the sort of dealing that might create an "impression of bias."

The trial court appears to have been under the impression that, if it found there was no *actual* bias, it could confirm the arbitration award. However, the question of whether Kagel was actually biased against Laughon is not the relevant inquiry where, as here, he was required to disclose matters that might create an impression of bias. (See, e.g., *Schmitz v. Zilveti* (9th Cir. 1994) 20 F.3d 1043, 1047 [discussing difference between "actual bias" cases and nondisclosure, or "reasonable impression of partiality," cases].)

Local 16 seems to acknowledge this, because it attempts to reframe the issue as a question of "impression of bias" when it argues that Kagel's service in the Hydorn matter did not give rise to any "impression of possible bias" and, therefore, his failure to disclose it could not be grounds for vacation of the arbitration award. We disagree with this argument.

■ Section 1281.9, subdivision (a) makes clear that a potential arbitrator is required to disclose all facts "that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial . . . ." We perceive no fundamental difference between section 1281.9's reasonable doubt of impartiality and prior case law's "reasonable impression of partiality." Section 1281.9 enumerates specific instances in which a reasonable doubt of impartiality would exist. One such instance is set out in section 1281.9, subdivision (a)(4)—when an arbitrator has served in "prior or pending *noncollective bargaining* cases involving any party to the arbitration or lawyer for a party for which the proposed neutral arbitrator served or is serving as neutral arbitrator." (Italics added.) Under the plain language of the statute, therefore, the disclosure explicitly mandated in section 1281.9, subdivision (a)(4) involves facts that could cause a reasonable doubt of impartiality. Kagel's failure to disclose the Hydorn matter, therefore, constitutes a failure to disclose facts that would give rise to a reasonable doubt of impartiality and is certainly grounds on which to vacate the arbitration award. (§ 1286.2, subd. (a)(6)(A).)

Local 16 argues, however, that before the award can be set aside, there must be, essentially, an independent analysis of whether the nondisclosed information created an impression of bias. Local 16 cites *Michael, supra,* 88 Cal.App.4th 925 and *Commonwealth, supra,* 393 U.S. 145 in support of this contention. Both these cases hold that an arbitrator is required to " 'disclose to the parties any dealings that might create *an impression of possible bias*' " and that the failure to do so is grounds for vacating the arbitration award. (*Michael, supra,* 88 Cal.App.4th at p. 936, quoting *Commonwealth, supra,* 393 U.S. at p. 149.) We see no conflict between those cases and the present one. Neither *Michael* nor *Commonwealth* involved a statute that clearly defined an arbitrator's activity in a certain area as giving rise to a reasonable doubt of impartiality. In those cases, as in many predating the 2002 amendments to the disclosure statutes,[6] the issue was whether an arbitrator's

[6] Local 16 cites a number of such cases, all of which concern the question of whether particular activity by an arbitrator creates an "impression of possible bias." (See *San Luis Obispo Bay Properties, Inc. v. Pacific Gas & Elec. Co.* (1972) 28 Cal.App.3d 556 [104 Cal.Rptr. 733]; *Gonzales v. Interinsurance Exchange* (1978) 84 Cal.App.3d 58 [148 Cal.Rptr. 282]; *Park Plaza, Ltd. v. Pietz* (1987) 193 Cal.App.3d 1414 [239 Cal.Rptr. 51], disapproved on other grounds in *Moncharsh v. Heily & Blase, supra,* 3 Cal.4th at pp. 27–28; *Ray Wilson, supra,* 166 Cal.App.3d 1081; *Betz v. Pankow* (1995) 31 Cal.App.4th 1503 [38 Cal.Rptr.2d

dealings gave rise to an impression of possible bias and, thus, required disclosure. Here, in contrast, the trial court was not required to make this inquiry, because the Legislature has already decided that, when a proposed arbitrator had previously served in an arbitration involving parties to the proposed arbitration, an impression of possible bias is created.

### D. *Disclosure of Service as Neutral Arbitrator Under Collective Bargaining Agreements*

█ It is undisputed that Kagel served as a neutral arbitrator of disputes arising under collective bargaining agreements involving clients of the Van Bourg firm. Laughon argues Kagel was required to disclose this service. Local 16, on the other hand, contends that section 1281.9, subdivision (a)(1) and (4), makes clear that Kagel was not required to make this disclosure. Local 16 also contends that, even if Kagel was required to disclose this service, Siegel was fully aware of it at all times and has waived any objection to the failure to disclose. In order to assist the parties should this matter be reheard, we now conclude an arbitrator is not required to disclose his service as a neutral arbitrator of disputes arising under collective bargaining agreements.

Section 1281.9, subdivision (a) provides that a proposed neutral arbitrator must disclose "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial . . . ." The statute articulates specific instances where such a doubt will be entertained. Of relevance to this case is section 1281.9, subdivision (a)(4). This section provides that a proposed neutral arbitrator shall disclose "[t]he names of the parties to all prior or pending *noncollective bargaining* cases involving any party to the arbitration or lawyer for a party for which the proposed neutral arbitrator served or is serving as neutral arbitrator, and the results of each case arbitrated to conclusion, including the date of the arbitration award, identification of the prevailing party, the names of the parties' attorneys and the amount of monetary damages awarded, if any." (Italics added.) A doubt of impartiality (and a concomitant duty to disclose) arises, therefore, when a proposed neutral arbitrator has previously arbitrated *non-collective-bargaining cases*. The most reasonable interpretation of section 1281.9, subdivision (a)(4)'s distinction between collective and non-collective-bargaining cases is that a proposed neutral arbitrator's prior work arbitrating collective bargaining matters is exempt from disclosure because service on such matters do not give rise to the same doubt of impartiality as service as an arbitrator of non-collective-bargaining cases.

---

107]; *Banwait v. Hernandez* (1988) 205 Cal.App.3d 823, 830–831 [252 Cal.Rptr. 647].) However, none of these cases involves section 1281.9, subdivision (a), which defines Kagel's nondisclosure as involving a matter "that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial."

Laughon points out that a proposed neutral arbitrator is also required to disclose any matter which might be grounds for disqualifying a judge under section 170.1 (§ 1281.9, subd. (a)(1)). Although she suggests that among these grounds would be service as an arbitrator in collective bargaining cases, section 170.1 is simply not this specific. Instead, section 170.1, subdivision (a)(6)(C), generally provides that a judge should disqualify himself or herself if "[f]or any reason . . . a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial. Bias or prejudice towards a lawyer in the proceeding may be grounds for disqualification. Section 1281.9, subdivision (a)(4), quite clearly suggests that a proposed neutral arbitrator's service arbitrating collective bargaining disputes does not give rise to a doubt of impartiality and section 170.1, subdivision (a)(6)(C), does not contradict this language.

In support of her argument to the contrary, Laughon cites *Valrose Maui, Inc. v. Morris* (D. Hawaii 2000) 105 F.Supp.2d 1118, 1123–1124. This case has nothing to do, however, with the specific question of whether a proposed arbitrator's service arbitrating collective bargaining disputes must be disclosed. In *Valrose Maui* the court vacated an arbitrator's award because the arbitrator failed to disclose that, while the arbitration was ongoing, a lawyer for one of the parties discussed with the arbitrator the possibility of arbitrating an unrelated dispute. (*Id.* at pp. 1123–1124.) The arbitrator agreed to do so after the arbitration had closed but before he had issued his ruling. The discussion between the arbitrator and the lawyer was not disclosed. Although the *Valrose Maui* court was convinced that the parties were acting in good faith, the court nevertheless found that there was a reasonable impression of partiality and concluded "the nondisclosure of the discussion and appointment, in at least the malpractice case, was clearly a serious failing that warrants vacating the Arbitration Award." (*Id.* at p. 1124.) Because this case neither construes California law nor even tangentially addresses the issue raised by Laughon, it is of no use to her.

## IV. DISPOSITION

The judgment is reversed and the case remanded to the superior court for action not inconsistent with this opinion. Costs on appeal are awarded to appellant.

Lambden, J., and Ruvolo, J., concurred.